# CHARLESTON.

PAXTON v. BENEDUM-TREES OIL CO.

Submitted February 20, 1917.   Decided April 17, 1917.

1. MINES AND MINERALS—*Grant of Royalties.*

   A grant of the royalties, rents and income arising from the production of the oil from land is a grant of the oil in such land.  (p. 191).

2. CASE PARTLY OVERRULED.

   Point one of the syllabus of the case of *Harris* v. *Cobb*, 49 W. Va. 350, is overruled in so far as it holds that the reservation in a deed of one-half of the royalties derived from the oil underlying the land conveyed is a reservation of only one-sixteenth of the oil in place.  (p. 191).

3. TENANCY IN COMMON—*Abstraction of Oil—Injunction.*

   The abstraction of mineral oil from lands by one joint owner to the exclusion of his co-tenant is waste and may be enjoined by the co-owner so excluded.  (p. 191).

4. SAME—*Oil Lease—Royalties—Accounting.*

   If a tenant in common take possession of the joint premises to the exclusion of his co-tenant and lease the same to a third party for the purpose of abstracting the oil therefrom, a specified proportion of such oil to be paid as royalty, the tenant so excluded may, if he choose, permit the lessee to continue operations under such lease, and require him to account for such proportion of the royalties as his interest in the oil in place bears to the whole thereof.  (p. 195).

5. DEEDS—*Construction—Effect.*

   In the construction of a deed the presumption is that the parties intended it to be effective, and a construction making a deed operative will be preferred to one rendering it void.  (p. 195).

6. SAME—*Construction—Ambiguity.*

   Where there is ambiguity in a deed, or where it admits of two constructions, that one will be adopted which is most favorable to the grantee.  (p. 195).

7. SAME—*Construction—Repugnancy.*

   If, in a deed, there be two clauses so totally repugnant to each other, that they cannot stand together, effect will be given to the first, and the latter rejected.  (p. 195).

8. MINES AND MINERALS — *Oil and Gas Lease — Construction — Royalties.*

An oil and gas lease, providing for the payment of one-eighth of the oil produced as royalty, and requiring the lessee to carry the lessor a one-sixteenth working interest clear through on the lease, means that the lessee shall conduct the operations upon said land without calling upon the lessor to contribute to the funds necessary to produce the oil, and shall pay to the lessor in addition to the royalty one-sixteenth of any profits derived from such operation as though he was actually a partner. (p. 197).

9. EVIDENCE—*Construction of Deed—Extrinsic Evidence.*

Extrinsic evidence will not be admitted to explain or alter the terms of a written contract which is clear and unambiguous. (p. 197).

10. SAME—*Parol Evidence—Written Contract—"Latent Ambiguity."*

Proper parol evidence is admissible to explain a latent ambiguity in a written contract, and a latent ambiguity is one which arises not upon the words of the instrument, as looked at in themselves, but upon those words when applied to the object sought to be accomplished by the contract or the subject which they describe. (p. 197).

11. CONTRACTS—*Construction—Certainty.*

Where a writing is ambiguous upon its face, it must be given effect, if possible, by the application of the well recognized canons of construction. If after the application of such rules of construction, the meaning of the writing remains doubtful it will be declared void for uncertainty. (p. 197).

(MILLER, JUDGE, dissenting).

Appeal from Circuit Court, Roane County.

Suit by C. C. Paxton and others against the Benedum-Trees Oil Company. Decree for defendant, and plaintiffs appeal.

*Affirmed.*

*Ryan & Boggess,* for appellants.

*John M. Baker* and *Pendleton, Mathews & Bell,* for appellee.

RITZ, JUDGE:

On the 18th day of March, 1904, the plaintiff C. C. Paxton, being the owner in fee of a tract of land situate in Roane

county, together with his wife, the plaintiff Phoebe Paxton, joined with a number of other parties in a deed which conveyed an interest in the oil and gas in the several tracts of lands owned by the various parties thereto to T. H. Kemper, the granting clause of which is:

"Witnesseth, that the said parties of the first part in consideration of the respective amounts hereinafter provided for, the said parties of the first part do grant and convey unto the parties of the second part the 1/16 of all the oil and 1/2 of all of the gas within and underlying the several and respective tracts of land hereinafter described, including in this conveyance the 1/2 of all the royalties, incomes and rentals that may hereafter arise therefrom or accrue upon the real estate hereinafter described by virtue of any oil and gas lease, or leases now on said several tracts of land or which may hereafter be placed on said several tracts of land or any of them, that is to say:" Then follows the description of ten tracts of land in which plaintiffs are not interested, and resuming in regard to the Paxton land says: "And the said C. C. Paxton and Phoebe F. Paxton, his wife, in consideration of $217.50 in hand paid do grant and convey unto the said T. H. Kemper 1/16 of all the oil and 1/2 of all the gas or the income from the gas within and underlying the following described tracts of land situate in said county and state, and fully described in the deeds from L. S. Hersman and wife, W. H. Hershman, W. T. Jennings and Mason Campbell to C. C. Paxton, and dated respectively October 29, 1901, March 14, 1902, September 5, 1898, March 28, 1901, and March 2, 1880, and recorded in said clerk's office in D. B. 36, page 518; D. B. 35, page 520; D. B. 30, page 104, D. B. 34, page 118; D. B. 8, page 282 respectively and containing in all 145 acres, more or less."

On the 9th day of August 1909, the plaintiff C. C. Paxton and his wife executed an oil and gas lease to I. A. Whitecotton and C. A. Hayhurst, covering this land. This lease contained the provisions usual in such leases except that it provided for the payment to the lessor of one-fourth of the oil produced instead of the usual one-eighth. No operations were conducted under this lease and it was on September 30,.

1909, surrendered and cancelled by agreement of the parties, and on the same date plaintiffs executed another lease for oil and gas purposes covering this land to I. A. Whitecotton. This lease grants the right to explore for and remove the oil and gas from the land for a period of one year from its date and so much longer as oil or gas is produced therefrom. It provides for the delivery to the grantee of one-eighth of all oil produced as royalty and for the payment of $300 per year for each gas well drilled, the product from which is marketed. There is a further provision in the lease in the following language: ''Party of the second part does agree to carry parties of the first part a one-sixteenth working interest clear through on this lease; If oil and gas be found in paying quantity to continue to drill the until the farm is drilled up.'' There is also a paragraph at the end of the lease as follows: ''1/16 of the oil and 1/2 of the gas or income from the gas is sold.'' This sufficiently states the terms and conditions of the lease for the solution of the questions arising in this case. It contains other covenants and provisions not involved in this litigation.

Shortly after he procured this lease Whitecotton transferred it to the defendant Benedum-Trees Oil Company, and thereafter it began to explore for oil and gas. The first well was completed in the spring of 1910 and produced oil in paying quantities. Other wells were subsequently drilled until at the time of the trial of this case in the court below in January, 1916, there had been five wells completed, all of which produced oil in paying quantities.

After the operating company began to produce oil a dispute arose as to the amount which should be delivered to Kemper and his assignees under the deed from Paxton and wife of March 18, 1904, above referred to. Paxton contended that the effect of that deed was to convey to Kemper one-sixteenth of the oil, he, Paxton, being entitled to one-eighth of fifteen-sixteenths as royalty; that if Kemper allowed the lessee to extract all of the oil, it would be incumbent upon him to secure an accounting for his one-sixteenth from the lessee, such lessee being, so far as the interest of Kemper is concerned, a trespasser. The provision of the lease requiring

the lessee to carry a one-sixteenth working interest for Paxton also became involved in the controversy, Paxton contending that under this provision he is entitled to a one-sixteenth interest in the oil produced after the payment of royalties free of any charge against the same for the cost of production, while the defendant operating company insists that under this provision Paxton is entitled to have one-sixteenth of the profits arising from the operation, without obligation on his part to furnish any money or to pay any losses in case the wells drilled were not productive. Paxton also claimed that the defendant operating company was not drilling upon the land as rapidly as the covenant in the lease required.

Paxton brought this suit for the purpose of having his rights determined and to compel the operating company to drill additional wells upon the land.

The first question to be settled is, what interest did Kemper take under the deed of March 18, 1904? Terms contained in the lease subsequently executed by Paxton are relied upon to aid in the construction of this deed. This cannot be done. The interest of Kemper and those claiming under him is fixed by the deed and cannot be affected by expressions in a paper subsequently made to which Kemper was not a party. Looking to the deed we find in the granting clause this language: "do grant and convey unto the parties of the second part the 1/16 of all the oil and 1/2 of all of the gas within and underlying the several and respective tracts of land hereinafter described, including in this conveyance the 1/2 of all the royalties, incomes and rentals that may hereafter arise therefrom or accrue upon the real estate hereinafter described by virtue of any oil and gas lease, or leases, now on said several tracts of land or which may hereafter be placed on said several tracts of land or any of them." What is the effect of the language, "the 1/16 of all the oil within and underlying the several tracts of land"? The defendant contends that when Paxton subsequently made the lease to its assignor purporting to lease all of the oil, he impliedly covenanted that his lessee should have quiet enjoyment of all of the oil. This covenant was broken it contends by reason of the outstanding Kemper interest, and because

of such breach it is entitled to take one-half of Paxton's royalty and turn it over to the Kemper interest. If this deed conveyed one-sixteenth of the oil, and that is all it purports to convey by the language now under consideration, Paxton's breach of the covenant for quiet enjoyment would not enlarge the Kemper interest. If the owners of the Kemper interest did not desire the oil to be produced under the lease made by Paxton, they, as tenants in common in the oil, could enjoin operations thereunder, as such operations would as to them constitute waste. *Williamson .v. Jones,* 43 W. Va. 562; *South Penn Oil Co.* v. *Haught,* 71 W. Va. 720. If, however, they desired to have the oil produced under the lease and with knowledge of the operations permitted them to go on, they might thus in effect ratify the lease, in which case they could compel the operating company to account to them for their part of the oil. The basis of such accounting is determined in the case of *South Penn Oil Co.* v. *Haught,* 71 W. Va. 720, to be the proportion of the royalty that they owned of the oil in place. *Cecil* v. *Clark,* 49 W. Va. 459. If the Kemper interests under the deed is one-sixteenth of the oil in place, then the owners of this interest would be entitled to one-sixteenth of the royalty. Conceding that there is a covenant for quiet enjoyment in the Paxton lease and that the same has been broken, the lessee thereunder would only be entitled to compensation for the breach. It will not do to say that Paxton would lose half of his royalty if the outstanding interest was only one-sixteenth of the oil. Upon this reasoning, if he had sold one-eighth of the oil in place and subsequently made a lease such as that involved here, he would lose all of his royalty; in other words, if he sold only one-eighth of what he had and then made a covenant for quiet enjoyment of the whole, the breach of such covenant would deprive him of the seven-eighths and transfer it to the grantee of the one-eighth. Following this reasoning still further, if he had sold one-fourth, and then made a lease such as that involved here, he would not only lose all of the royalty, but would have to account to his grantee for an additional amount equal to the royalty derived from the land. Such a contention cannot be sustained. It is claimed that

*Kilcoyne* v. *Southern Oil Company,* 61 W. Va. 539, supports this view. An examination of that case shows that an owner of land sold and conveyed one-sixteenth of the oil underlying the same. Subsequently he leased the land for oil and gas purposes, the royalty to be one-eighth of the production. In a suit to settle the rights of the parties, it was held that the purchaser of the one-sixteenth of the oil in place was entitled to receive one-half of the royalties or one-sixteenth of the oil delivered to him in the pipe line. This conclusion is not sound and is repudiated by the case of *Headley* v. *Hoopengarner,* 60 W. Va. 626, cited to support it. In the Headley case the owner of the land had sold one-half of the oil in place before the lease was made and the court held that the purchasers of this one-half were entitled to receive upon an accounting one-half of the royalty, or one-sixteenth of the total production. The court puts its conclusion to some extent upon the acts of the parties in signing a division order fixing this proportion, but holds that independent of such a division order that would be the measure of the rights of the purchasers of the one-half of the oil in place. If the court in the Headley case had taken the view expressed in the Kilcoyne case, then the purchasers of the one-half of the oil in place would have been entitled to all of the royalties and three-eighths of the remaining oil, or one-half of all the oil produced delivered to them in the pipe lines free of charge. It thus appears that the claim of the Kemper interest to one-half of the royalty oil cannot be supported upon the language attempting to convey one-sixteenth of the oil underlying the land.

But what is the effect of the further language used conveying one-half of all the royalties, income and rents from the oil and gas? In *Toothman* v. *Courtney,* 62 W. Va. at page 175, Judge POFFENBARGER says: "Though he did not reserve by name the oil in place, or any part of it, his reservation of all the rental or royalty to be derived from it, compels the court to hold, by construction of the instrument, that it vests in him the title to that thing, the beneficial use whereof has been reserved, namely, the oil in place."

So in *Weakland* v. *Cunningham,* 7 Atlantic Rep. 148

(Penn.) it was said: "The following reservation in a deed: 'Excepting the profits of one-half of all the stone coal, and of all other kinds of mineral, which may be discovered at any time hereafter,' is a reservation of the corpus of all such coal and mineral in place." In *Updegraff* v. *Coal & Land Co.*, 74 W. Va. 316, it was held that a reservation of oil and gas royalties was a reservation of the oil and gas in place.

In the case of *Green* v. *Biddle,* 8 Wheat., at page 76, Mr. Justice Washington speaking for the Supreme Court of the United States says: "A right to land essentially implies a right to the profits accruing from it, since without the latter, the former can be of no value. Thus, a devise of the profits of land, or even a grant of them, will pass a right to the land itself. (Shep. Touch. 93 Co. Litt. 4 b.) 'For what,' says Lord Coke, in this page, 'is the land, but the profits thereof."

In *Drusadow* v. *Wilde,* 63 Pa. St. 170, the court by Mr. Justice Sharswood says: "But there is no construction of words older and better settled than that a grant or devise of the profits of land passes the land itself."

A similar holding was made by the Supreme Court of Pennsylvania in *France's Estate,* 75 Pa. St. 220, Judge Sharswood delivering the opinion of the court.

See also *Scranton* v. *Phillips,* 94 Pa. St. 15; *Parker* v. *Plummer,* Cro. Eliz. 190; *Paramour* v. *Yardley,* Plowd, 541; *Johnson* v. *Arnold,* 1 Ves. Sen. 171; *Reed* v. *Reed,* 9 Mass. 372; *Anderson* v. *Greble,* 1 Ashm. 138; *Carlyle* v. *Cannon,* 3 Rawle, 489.

We are clearly of the opinion that the grant of one-half of the royalties, rents and income from the oil is a grant of one-half of the oil in place. In *Harris* v. *Cobb,* 49 W. Va. 360, the first point of the syllabus is as follows: "M. and husband conveyed by deed to H. 52 acres of land in fee, which deed contained this provision: 'The parties of the first part reserve unto themselves, and do not convey by this deed, the equal one-half part of the usual royalty of one-eighth of all the petroleum or oil in and underlying the tract of land hereby conveyed.' *Held,* to be an exception from the operations of said deed, reserved to the grantors, of the title in

fee to the one-sixteenth of the oil in place in and underlying said tract of land, and to be delivered to her when produced as royalty, without expense to her for production.''

We cannot agree to this proposition and we overrule that decision in so far as it is there held that the reservation of one-half of the royalty is a reservation of only one-sixteenth of the oil in place. It should have been held that such a provision was a reservation of one-half of the oil in place.

In this same paragraph of the deed then there is a grant of one-sixteenth of the oil and also of one-half of the oil. What construction shall we give it? In the construction of deeds is must be borne in mind as a canon of construction that deeds are intended to have effect and that a construction making a deed operative will be preferred to one rendering it void. 2 Devlin on Real Estate, §850; 13 Cyc. 604. Here are inconsistent provisions. To which shall effect be given? There is another canon to be observed in the construction of deeds, and that is that where there is ambiguity in a deed, or where it admits of two constructions, it will be construed most strongly against the grantor, or most favorably to the grantee. 13 Cyc. 609. In *Griffin* v. *Coal Co.* 59 W. Va. 483, it is held that where the words used in a deed are ambiguous they will be given that construction most favorable to the grantee.

So in *Carrington* v. *Goddin,* 13 Gratt. 587, it is held: ''If it is doubtful on the face of the deed whether one or both of the parcels were intended to be conveyed, the deed will be construed most strictly against the grantor and so as to give it effect, rather than that it should be void for uncertainty.''

In *Wilson* v. *Langhorne,* 102 Va. 631, it is held: ''A grantor must be considered as having intended to convey all that the language he has employed is capable of passing to his grantee.'' In 2 Devlin on Real Estate, §848, it is said: ''Where the language of the deed will admit of two constructions, the one less favorable to the grantor is to be adopted.''

In *City of Alton* v. *Transportation Co.,* 12 Ill. 38, 52 Am. Dec. 479, it is held that a ''deed capable of two constructions must be construed most strongly against the grantor.''

In *Lumber Co.* v. *Sheets,* 75 W. Va. 21, it is held: ''Generally, where the language of a deed is susceptible of two in-

terpretations, and the uncertainty is not cleared by evidence properly admissible, that interpretation is to prevail which is most favorable to the grantee."

See also *Allen* v. *Yeater,* 17 W. Va. 128; *Turk* v. *Skiles,* 45 W. Va. 85; 2 Sharswood's Blackstone, 379; *Clough* v. *Bowman,* 15 N. H. 504; *Lincoln* v. *Wilder,* 29 Me. 169; *Isaac* v. *West's Executor,* 6 Rand. 652; *Pike* v. *Monroe,* 36 Me. 309, 58 Am. Dec. 751. Here we have a deed containing inconsistent provisions. Shall it be held void for this uncertainty? We must give it effect if it can be done by the application of well-recognized rules of construction. To do this we must adopt that construction most favorable to the grantee and hold that this provision of the deed conveys a one-half undivided interest in the oil and gas in place.

There is a provision in the latter part of the deed in connection with the consideration to be paid Paxton and the description of the real estate as follows: "And the said C. C. Paxton and Phoebe F. Paxton his wife, in consideration of $217.50 in hand paid do grant and convey unto the said T. H. Kemper 1/16 of all the oil and 1/2 of all the gas or the income from the gas within and underlying the following described tracts of land." Then follows the description of the land. This provision, in so far as it has reference to the interest granted in the oil is in irreconcilable conflict with the granting clause of the deed. As we have seen, one-half of the oil is conveyed by the prior granting clause, and this provision purports to convey only one-sixteenth. In 2 Sharswood's Blackstone, 379, it is said: "That, in a deed, if there be two clauses so totally repugnant to each other, that they cannot stand together, the first shall be received, and the latter rejected."

The same doctrine is declared in 13 Cyc. 619.

In *Blair* v. *Muse,* 83 Va. 238, it was held that where two clauses in a deed are repugnant, the first shall prevail. In *Webb* v. *Webb,* 29 Ala. 588, it is said: "The rule is well settled, that if two clauses of a deed are so repugnant that they cannot stand together, the first must prevail over the last." It seems to be well settled that where two clauses in a deed are repugnant, effect shall be given to the first and the

latter rejected. *Pike* v. *Monroe,* 36 Me. 309, 58 Am. Dec. 751; *Doe* v. *Porter,* 3 Ark. 18, 36 Am. Dec. 448; *Cutler* v. *Tufts,* 3 Pick. 272.

From what has been said it follows that Paxton at the time he made the lease to Whitecotton owned only a one-half undivided interest in the oil in the land covered by the lease, and under the terms of the lease he is entitled to receive one-eighth of this one-half. This was conceded to him by all parties and was decreed to him by the court.

The parties disagree as to what interest Paxton has under that clause of the lease reading—"Party of the second part does agree to carry parties of the first part a one-sixteenth working interest clear through on this lease." When we read the whole paper we find that the interests of the parties thereunder are classified as follows: that of owner of the real estate receiving a definite part of the production as rent or royalty; and that of worker or proprietor of the operations upon the real estate. The owner receives one-eighth of the oil produced and the operator seven-eighths. Under the contract Paxton not only received the rent but he is interested in the operations. He has a one-sixteenth interest in the working company. He claims that he is to have this one-sixteenth free from any charge for the cost of production; that he is entitled to one-sixteenth of seven-eighths of the oil produced. The contract cannot be given such a construction. This interest is on exactly the same footing as the interest of any other person engaged in the operation, except that the lessee agrees to carry the interest for Paxton, that is, put up the money for Paxton's interest; and in case there were losses Paxton could not be called upon for any part thereof; in case the operations were profitable Paxton would receive one-sixteenth of the profits. This contract is too plain to admit of any other construction. A working interest could mean nothing but an interest in the operations conducted on the land and such interest would only have value to the extent and in the event such operations were profitable.

A great deal of parol evidence was introduced to show the agreements of the parties at the time these papers were executed. Such evidence is not admissible. The lease in so far

as the provision in question here is concerned is clear and unambiguous and parol evidence will not be admitted to give it any other construction. *Wade* v. *McDougle;* 59 W. Va. 113, 52 S. E. 1026; *Griffin* v. *Coal Co.,* 59 W. Va. 480, 53 S. E. 24. Neither can such evidence be considered in construing the deed from Paxton and wife to Kemper. It is true this deed is ambiguous; it contains repugnant provisions; but such ambiguity appears from the face of the deed itself. Parol evidence is only admissible to explain an ambiguity in a writing when such ambiguity is latent, and a latent ambiguity is "that which seemeth certain and without ambiguity for anything that appeareth upon the deed or instrument, but there is some collateral matter out of the deed that breedeth the ambiguity." Bacon, Max 23; Broom, Leg. Max 608; 3 Jones on Evidence, §472; *Ferguson* v. *Rafferty,* 6 L. R. A. 33. The ambiguity in this deed is apparent and in such case the court must if possible give effect to the writing by the application of well recognized rules of construction. If after the application of such rules the meaning is doubtful, it must be declared void for uncertainty. Parol evidence will not be admitted to remove such ambiguity.

Complaint is made of the action of the circuit court in sustaining a demurrer to an amended and supplemental bill which attacked as a forgery and as fraudulent a paper introduced in evidence purporting to be signed by the plaintiff C. C. Paxton attempting to place a construction upon certain provisions of the deed and contract of lease. The paper referred to places the only construction upon these papers that could be properly given them, and it is therefore entirely immaterial that the paper was introduced in evidence, and the action of the court in sustaining the demurrer to this amended and supplemental bill was entirely proper.

It is contended by the plaintiffs that the court erred in refusing to require the defendant operating company to drill more than one additional well upon the property. The court below found that another well might be drilled with profit and that such other well would probably have been drilled but for the pendency of this suit, and requires the operating company to drill such well within six months under penalty

of having the lease removed as a cloud as to a certain part of the land; and the decree leaves open for further proper proceedings the determination of the question of drilling additional wells should the future operations of the defendant upon the land be unsatisfactory to the plaintiffs. It must be remembered that the drilling of these wells involves the expenditure of considerable sums of money and the judgment of the operator, when honestly exercised, as to the number of wells required and their location will not be interferred with unless it is made to appear with reasonable certainty that the operations being conducted are not in a material degree productive of the best results. We think the court below took the correct view of this matter, and the decree does not foreclose the plaintiffs from further action, should the future operations of the defendant prove inadequate to the proper development of the whole tract of land.

The decree of the circuit court for costs against the plaintiffs is complained of. The defendant's contentions in regard to the proper construction of the deed and lease were sustained and the only relief given plaintiffs was the requirement that another well be drilled, which the court found would probably have been done before that time but for the pendency of this litigation. The circuit court's conclusion that the defendants substantially prevailed therefore seems sound.

It follows that the decree complained of will be affirmed with costs to the appellees.                 *Decree affirmed.*

MILLER, JUDGE, *(dissenting):*

I cannot concur in the construction given the deed from Paxton to Kemper, of March 18, 1904; nor am I willing to concur in effectually overruling prior decisions of this court which have become rules of property, and which may result in doing great injury to those who have relied thereon, in conducting so important a business as mining for oil and gas has become in this state. As it would serve no good purpose to enter into any lengthy discussion of the principles involved in the cases alluded to, I will content myself by simply recording my dissent.