ALBERT HODGE *v.* C. P. GARTEN

(No. 8238)

Submitted October 30, 1935. Decided November 12, 1935.

*Hubard & Bacon,* for plaintiff in error.
*Love & Love,* for defendant in error.

WOODS, JUDGE:

This is an action in assumpsit to recover the contract price, less credits, of certain mine posts which plaintiff claims to have sold defendant. The latter complains of judgment against him.

Plaintiff bases his right to recovery on a written contract, executed February 17, 1933, which, after omitting the introductory and signatory paragraphs, reads:

"Witnesseth: That for and in consideration of the sum of Five Hundred ($500.00) Dollars cash in hand paid to the party of the first part by the party of the second part, and the further consideration hereinafter mentioned, the party of the first part hereby agrees to and does sell unto the party of the second part, and the party of the second part does hereby agree to buy, *all mining posts that the party of the first part has made and now has on hand,* at the price of one cent (1c) per lineal foot for each post. It is further agreed by and between the parties hereto that the Five Hundred ($500.00) Dollars which is paid upon the signing of this contract is to be credited on the payment for the posts and the balance to be paid in sixty days from the date of this contract."

In accordance with the clause, which we have italicized, the plaintiff introduced evidence showing that, at the time of the execution of the contract, he owned mine posts at Huddleston farm, Nickelville, Graydon, Victor, Fox farm and Hypes farm.

Defendant, in support of his position that the agreement was limited to mine posts at Huddleston farm and Nickelville, testified on the trial that plaintiff had broached him a few days prior to execution of the contract on the matter of purchasing mine posts; that plaintiff took him to Huddleston farm and Nickelville (a short distance from Fayetteville) to look over the posts; that on returning to Fayetteville plaintiff stopped his car, and both had a talk about the contract, it being understood that defendant pay $500.00 down and the remainder in sixty days; that plaintiff said, ''I think we better have a written contract in regard to this''; that defendant said, ''No, it doesn't make any difference. I will make a notation on the check, stating what our contract is, but I have no objection to a contract because I expect to live up to it''; that plaintiff replied, ''Well, to be sure about it, I will go over and have the contract written up''; that while plaintiff was gone, defendant stepped into the bank and wrote a check for $500.00 on which he made the notation: ''$500 payment on mine props at Nickelville and on Huddleston farm at one cent per lineal foot''; and that when plaintiff returned to the car defendant looked over the contract and believing it embodied their agreement signed the same in duplicate, and gave plaintiff the check. Defendant also testified that on May 16, 1933, he sent plaintiff by mail a check for $295.66 ''in full of account,'' and included therewith a statement showing the number of lineal feet of posts at Nickelville and Huddleston farm; and, further, that he did not know that plaintiff owned other posts until six months after the execution of the contract.

Plaintiff testified, however, that he and defendant had agreed the day before and that he met defendant coming out of the bank with the check for $500.00, and upon reading the notation thereon, said to himself, ''Old man, you are aiming to zip me right now and use this check as a witness,'' and

then turning to defendant told him that "We had better have a written contract," etc. He, also, states that the notation on the check of May 16, 1933, was made after payment.

At the conclusion of the testimony the trial court, at the instance of plaintiff and over objection of defendant, gave the former's instruction No. 1 which told the jury that in the absence of fraud the written contract, dated the 17th day of February, 1933, is the only evidence to be considered in determining the terms of the agreement, the price to be paid for the mine posts and *the quantity of posts sold thereunder.*

After the jury had returned their verdict, defendant moved that the same be set aside and that a new trial be awarded him, because of certain after-discovered evidence, and the action of the court in limiting the jury to the written contract as to the quantity of the posts sold.

On the matter of after-discovered evidence, the defendant called Mr. Haynes, an attorney of Fayetteville, and questioned him in regard to the drafting of the contract declared on. Haynes stated that he suggested that plaintiff insert the location of the various mine posts, and that the latter replied that he did not want that in the contract. Plaintiff challenges the admissibility of such testimony. There is no rule of law better settled than that an attorney shall not be permitted to divulge any matter communicated to him in professional confidence. *Chahoon's* case, 21 Gratt. (Va.) 822. The nature of the work performed by the attorney under question was the drawing of the contract in the case. An attorney employed to draw a deed must be considered as acting in a line of his profession, and bound to conceal the facts disclosed by the person who employs him. *Parker* v. *Carter,* 4 Munf. (Va.) 273, 6 Am. Dec. 513. This principle extends even to scriveners acting as attorneys in any particular transaction. *Clay* v. *Williams,* 2 Munf. (Va.) 105, 5 Am. Dec. 453. But it is urged that the attorney made no charge for his services and that none were paid by the plaintiff to him for his service in drawing the contract. The law is stated in 28 R. C. L. 554, section 144, to be that if an attorney is consulted and he allows the consultation to proceed and he acts as adviser, the fact that no compensation is paid will not remove the seal of

secrecy from the communications made to him. So in our own state a communication to an attorney by one whom he had previously given advice concerning the subject matter of the communication, and to whom he was giving advice generally during the period of time in which the communication was made, is privileged, notwithstanding the law of charge or payment for services rendered. *Donohoe* v. *Collett*, 87 W. Va. 383, 105 S. E. 265. Under the foregoing authorities we are constrained to reject the evidence of witness Haynes on the question of setting aside the verdict.

This brings us to the question of whether or not the jury were erroneously limited by the giving of plaintiff's instruction No. 1. It will be observed that the contract does not attempt to give the location of any of the posts purported to be sold. It merely says "all mining posts that the party of the first part has made and now has on hands." While a more comprehensive word cannot be found in the English language, "all" has its limitations. To say that defendant purchased posts several hundred miles away at one cent per lineal foot would in some cases be preposterous. The word must have some qualification or limitation. It being impossible, from a mere inspection of the contract, to ascertain the intention of the parties in the use of the word "all," extrinsic evidence of surrounding facts and circumstances becomes admissible for the purpose of ascertaining the posts actually intended. *Paxton* v. *Benedum-Trees Oil Co.*, 80 W. Va. 187, 94 S. E. 472.

As heretofore indicated, both parties had viewed the posts located at Huddleston farm and Nickelville. The check representing the down payment bore the notation that the amount was in payment on posts at Huddleston farm and Nickelville. Both of the foregoing places were within five miles of the point where the posts were to be marketed. On the other hand, the posts at Graydon, Victor, Fox farm and Hypes farm, were some twenty miles distant from the market, thus necessitating a long and expensive haul. We are of opinion that the foregoing, as well as other facts, have a direct bearing on the identity of the posts contemplated by the words "all mine posts" as used in the contract. The trial court erred in

the giving of plaintiff's instruction No. 1. It should have given defendant's instruction No. 8, which would have properly submitted the matter to the jury.

In view of the error of the court in giving and refusing of instructions, the judgment must be reversed, the verdict of the jury set aside, and a new trial awarded the defendant.

*Judgment reversed; verdict set aside; new trial awarded.*