UNITED CARBON COMPANY *v.* J. L. PRESLEY *et al.*

(No. 9537)

Submitted February 1, 1944. Decided March 14, 1944.

*Oliver D. Kessel* and *Harper & Baker,* for appellants.
*W. F. Boggess,* for appellees.

RILEY, JUDGE:

United Carbon Company, a corporation, lessee under two oil and gas leases, one dated November 19, 1936, from J. L. Presley and wife, and the second dated September 27, 1941, from Benjamin D. Shatto and others (herein called "Shatto group"), both leases covering the same fifty-eight acres, more or less, on the waters of Mill Creek in Ripley District, Jackson County, sought by this bill of interpleader the direction of the Circuit Court of Jackson County in the matter of distribution of royalties under said leases. The pivotal issue is whether the Shatto group is entitled to receive one-half of the royalties as it contended or one-sixteenth thereof as defendant Presley contended. The circuit court's decree adopted the Presley contention and the Shatto group obtained an appeal here.

The issue presented here concerns a deed dated April 27, 1907, executed by Philip Shatto to Ballard Brown, conveying three tracts of land, two of which aggregate fifty-eight acres with which we are dealing herein, which deed contains the following exception and reservation:

"It is expressly understood that there is excepted and reserved from the operation of this conveyance and the same does not convey the one half of the oil and gas royalty upon and as to said two tracts of land, containing 20 acres, more or less, and 38 acres more or less, that is to say the said Shatto reserves the undivided one sixteenth of the oil and gas underlaying said two small parcels of land; and each of the parties hereto hereby agrees and binds himself, his heirs and personal representatives to join in such lease, or leases, with the other of oil and gas in said two small parcels of land that may be necessary or proper for the development of the oil and gas under said two small parcels of land, or either of them and to do all things necessary to promote the development thereof."

The Shatto group, successors in title to Philip Shatto, asserts (1) that the reservation is clear and reserves one-half of the royalties; and (2) that if the language is ambiguous then Presley is estopped from claiming any greater interest than one-half because the parties to the deed had an understanding that Shatto was to reserve unto himself one-half of the oil and gas; that by lease executed thereafter by both Shatto and Brown, payments arising therefrom were divided equally between them; and, further, that in a second lease executed by grantee Brown alone, it was stated that one-half of the oil and gas had been reserved by Shatto, both leases being of record in the county clerk's office of Jackson County, and by reason whereof subsequent purchasers of land had constructive notice of Shatto's ownership of one-half of the minerals.

On the other hand, defendant Presley, who is owner of a part of the minerals conveyed by Shatto to Brown

in the deed mentioned above, contends that grantor Shatto's interpretation of his reservation is contained in the words "that is to say the said Shatto reserves the undivided one sixteenth of the oil and gas underlaying said two small parcels of land". The trial chancellor accorded the language such a construction and, in an opinion, incorporated as a part of the record, reasoned that while the first portion of the reservation was clear and without limitation, the grantor limited and defined his general terms by definite and specific words, thus removing all doubt of his intention, and concluded that grantor Shatto had reserved one-sixteenth of the oil and gas in place. To that view we cannot subscribe.

It is true, as all parties and the lower court agree, that the reservation of "one half of the oil and gas royalty upon and as to said tracts of land", without more, would have effected a legal reservation of one-half of such minerals in place. *Paxton* v. *Benedum-Trees Oil Co.*, 80 W. Va. 187, 94 S. E. 472; *Snodgrass* v. *Koen*, 82 W. Va. 337, 96 S. E. 606; *Manufacturers Light & Heat Co.* v. *Knapp*, 102 W. Va. 308, 135 S. E. 1. The rational of the principle enunciated in those cases is expressed in *Toothman* v. *Courtney*, 62 W. Va. 167, 175, 58 S. E. 195, in this language: "Though he did not reserve by name the oil in place, or any part of it, his reservation of all the rental or royalty to be derived from it, compels the court to hold, by construction of the instrument, that it vests in him the title to that thing, the beneficial use whereof has been reserved, namely, the oil in place." It is clear that in the first clause of the language which we are appraising the subject matter is expressed as "royalty", while in the latter clause it is described as oil and gas underlying the land. If we accord to the term "royalty" its full legal significance and meaning, it follows that there is a repugnancy between the two clauses. It was held in *Paxton* v. *Benedum-Trees, supra,* pt. 7 syl., that, "If, in a deed, there be two clauses so totally repugnant to each other that they cannot stand together, effect will be given to the first, and the latter re-

jected". The application of that guide of construction to the language under consideration would result in a disaffirmance of the trial court's conclusion.

The same result obtains when we examine the language of the instrument to determine the sense in which the parties to the deed must have understood it. When Shatto used the term "royalty" in the reservation unquestionably he was thinking in terms of beneficial yield to him from ownership of a part of the oil and gas in place, and the fact that in the same paragraph of the deed the parties bound themselves to join in a lease or leases of the oil and gas reflects unequivocally that they were thinking in terms of such beneficial yield, rather than attempting to measure their ownership of minerals in place. Therefore, when the further language: "that is to say the said Shatto reserves the undivided one sixteenth of the oil and gas underlaying the land" was added, it defined specifically what would be the beneficial yield to Shatto upon development of the land for oil and gas purposes. In other words, it defined the term "royalty" in the sense of beneficial yield rather than ownership of the minerals in place and made specific what was meant by one-half of the royalty. Since the purpose of the interpleader suit is distribution of royalties, we conclude that the Shatto group is entitled to one-half thereof.

Appellants further complain of the trial chancellor's overruling of their motion for entry of a decree in their favor on account of the default of defendant Presley to file an answer or pleading on or before August 25, 1942. From the record it appears that on August 13, 1942, a decree was entered requiring defendants to interplead among themselves. For the purpose of aligning the parties, it was decreed that the Shatto group "shall take and assume the affirmative of the issues involved", and thereafter be known as "proponents", while the other defendants, including Presley, were to assume the negative of the issues involved and were to be known as "respondents". Under the decree proponents were given until the

last day "of the present term of court" to file an answer, setting out his or her contentions as to the subject matter contained in the bill of complaint, while respondents were given until August 25, 1942, "to file an answer or pleading in the clerk's office of this Court", presenting their respective contentions as to the matters contained in proponents' answer. The Shatto group on August 15, 1942, presented in open court their joint and separate answer to plaintiff's bill, while Presley filed a demurrer to the answer of the Shatto group on August 25, 1942. Thereafter, on November 9, 1943, the Shatto group moved the court to enter a judgment in their favor on the ground that defendants "had failed to file any answer or other pleading" within the time given them by the court to file such answer or other pleading, and that by reason of such failure, defendant Presley "had no further right to be heard upon any further claims" to the royalties. As above indicated, this motion was overruled and defendant Presley and his associates were ordered to file their answer "during the present term in which they or any of them shall set out specifically the nature of their claims to royalties". On the same day the court permitted defendant Presley to file his answer in open court. In the same decree, the court indicated its opinion that the order entered August 13, 1942, was premature in the alignment of the parties as proponents and respondents which should not have been made until the respective answers of each of the opposing claimants had been filed; and the court of its own motion, over objection of the Shatto group, set aside and annulled its decree of August 13, 1942.

In Story's Equity Pleadings, 10th Ed., Section 297a, it is stated that in an interpleader suit, "If the defendants do not deny the statements of the bill, the original decree is that the defendants do interplead". Thereafter, each defendant. occupies the position of a plaintiff, and may state his own claim and answer that of the other interpleader. 33 C. J. 459, citing *Howland Bros. & Cave* v. *Barre Sav. Bank & Trust Co.*, 87 Vt. 181, 88 A. 732. In

30 Am. Jur., subject Interpleader, Section 25, proceedings after an order of interpleader are described thus:

"\* \* \* If the bill of interpleader is ripe for decision at the time of hearing, the court ordinarily will proceed at once to render a final decree settling the rights of all parties at once. On the other hand, if the case is not ripe for decision, the court, upon dismissing the plaintiff, will direct an action or an issue on a reference to a master, as may be best suited to the nature of the case. As between the defendants compelled to interplead, recovery rests upon the strength of the claim of one, rather than upon the weakness of the other. The court, in determining the rights of the claimants, may do complete equity between them and, generally, see to it that no just right or privilege of trial is lost to either party as a result of having been compelled by bill of interpleader to litigate in a court of equity."

Until each·of the contesting groups in the instant case had filed an answer showing the basis of its claim, the trial court could not determine the issue, if any, between the contestants and therefore could not designate an alignment of parties proponent and respondent. Clearly there was error in so doing on August 13, 1942.

The complaint of the Shatto group is that the trial chancellor gave respondents until August 25, 1942, to file "an answer or pleading", and that their failure so to do entitled the Shatto group to a default decree. There is authority that when a defendant permits a bill of interpleader to be taken as confessed against him, it is taken as to him that he has made a groundless claim against the fund. (See Daniell's Chancery Pleading and Practice, 6th Am. Ed., page 151, citing *Badeau* v. *Rogers*, 2 Paige N. Y. 209) ; but were· the court's designation of parties not premature, the contention that defendant Presley had not responded to the directive of the court would not be well founded, for he complied therewith by filing a demurrer. *Snider* v. *Cochran*, 80 W. Va. 252, 257, 92 S. E. 347.

Apparently the parties in the trial court thought the procedure set forth in the order of August 13, 1942, was proper for there is nothing in the record to indicate that objection thereto was made. We think the parties merely responded to an erroneous order. At the time appellants sought entry of the default decree, the demurrer had not been disposed of, and it was then that the court, recognizing that the alignment of the parties had been premature, undertook to correct the situation and set aside the prior order. That order was unquestionably interlocutory. Certainly, it was not an appealable order under Code, 58-5-1. In Miller's Hogg's Equity Procedure, 3rd Ed., Vol. 1, pages 684, 685, it is stated that an interlocutory decree can be altered or amended at any time, and, further, that "on a final hearing, all interlocutory decrees are under the control of the court, and may then be altered, modified or vacated as the state of the case and the equities thereof may require." In these circumstances we do not think there was error in the court's corrective procedure.

Being of opinion, however, that the trial court erred in decreeing that the Shatto group was the owner of one-sixteenth of the oil and gas in place, we reverse the decree and remand the cause for further proceedings consonant herewith.

*Reversed and remanded.*