# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

2023 Fall Term

_____

No. 22-ICA-207

_____

**FILED**

**November 13, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

EARL J. NICHOLSON AND JOYCE A. NICHOLSON
Plaintiffs Below, Petitioners,

v.

SEVERIN POA GROUP, LLC, ANTERO RESOURCES CORPORATION,
ROCKWELL RESOURCES, LLC, JEC PRODUCTION LLC, AND ROBERT R.
JONES, ET AL.
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Doddridge County
Honorable Timothy L. Sweeney, Judge
(Case No. CC-09-2020-C-25)

REVERSED AND REMANDED

_____

Submitted: September 21, 2023
Filed: November 13, 2023

Andrew R. Cutright, Esq.
Roger L. Cutright, Esq.
Cutright Law PLLC
Morgantown, West Virginia
Counsel for Petitioners

Frank Simmerman, III, Esq.
Chad L. Taylor, Esq.
Frank E. Simmerman, Jr., Esq.
Simmerman Law Office, PLLC
Clarksburg, West Virginia
Counsel for Respondent Severin POA
Group, LLC

CHIEF JUDGE GREEAR delivered the Opinion of the Court.

GREEAR, Chief Judge:

Petitioners, Earl J. Nicholson and Joyce A. Nicholson (collectively referred to as the "Nicholsons") appeal the September 28, 2022, declaratory judgment order of the Circuit Court of Doddridge County, in which that court determined that "F.W. Severin reserved [one-half] of the oil and gas mineral estate in [a] 1902 handwritten deed," as opposed to the "one-sixteenth interest" as stated on the face of the deed. The Nicholsons contend that the circuit court erred by interpreting an unambiguous deed, thereby changing the plain meaning of that deed. Further, the Nicholsons aver that interpreting an unambiguous deed and changing the plain meaning of the same, undermines the confidence of deeds, particularly ones that include a grant or reservation of an undivided mineral interest.

After a review of the record and the arguments on appeal, we find that the language of the 1902 handwritten deed is unambiguous and clearly reserves a one-sixteenth oil and gas mineral interest, not a one-half interest. Accordingly, we reverse the circuit court's September 28, 2022, order and remand the case to circuit court for further proceedings consistent with this opinion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The relevant chain of title for the property at issue begins with F.W. Severin, who as of January 1, 1902, was vested with the entirety of the surface, oil, gas, and

1

"hydrocarbon" mineral interests in 224 acres of land in Doddridge County, West Virginia. *See* Respondent Severin's brief at page 1. On April 1, 1902, by handwritten deed, Mr. Severin conveyed 117.55 acres of his 224 acre estate, including the property at issue, to L.D. Nicholson, but expressly reserved for himself "one-sixteenth of all the oil and gas in and under said land." *See* Appendix at pages 375-76. In October of 1977, the Nicholsons' predecessor in title leased the interest in the oil and gas underlying the subject property to Rockwell Petroleum Company ("Rockwell"), who later assigned a portion of that interest to Antero Resources Corporation ("Antero"). Through subsequent conveyances, the subject property was transferred to the Nicholsons, the petitioners herein, who have owned the property since November 4, 1999.

In 2017, Antero began to produce and sell a portion of the oil and gas underlying the subject property and, thereafter, began sending monthly royalty payments to the Nicholsons related to the production and sale of that oil and gas. However, a dispute regarding the amount of the oil and gas mineral interests held by the Nicholsons in the subject property developed and the resultant calculation of royalty payments due to the Nicholsons was questioned. The Nicholsons claimed that under the express terms of the April 1, 1902, deed, that Mr. Severin reserved only a one-sixteenth oil and gas mineral interest in the subject property, leaving the remainder of the oil and gas mineral interest, fifteen-sixteenths, to the Nicholsons. Conversely, the descendants of Mr. Severin (collectively referred to below and in this appeal as "Severin POA Group, LLC" or "Severin") argued that although the 1902 deed expressly stated that Mr. Severin reserved

2

one-sixteenth of the oil and gas mineral interests in the subject property that given "the commonly accepted practices and customs used" at that time, a reservation of one-sixteenth of an oil and gas mineral interest was actually a reservation of one-half of that interest. The parties were unable to amicably resolve their dispute and, on October 5, 2020, the Nicholsons filed the underlying action.

On March 29, 2021, the Nicholsons amended their complaint to seek the circuit court's declaration as to the interpretation of the reservation of the oil and gas mineral interests by the 1902 deed.[1] By order dated September 28, 2022, the circuit court reasoned that construction of the deed on its date of execution in 1902 supported "the conclusion that the reservation of one-sixteenth of the oil and gas operates to reserve one-half of the oil and gas estate under West Virginia Law in 1902 and the early 1900s." *See* Appendix at page 587. It is from the September 28, 2022, order that the Nicholsons now appeal.

## II.  STANDARD OF REVIEW

"'A circuit court's entry of a declaratory judgment is reviewed *de novo*.' Syllabus Point 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995)." Syllabus Point 1, *City of Martinsburg v. Berkeley Cnty. Counc.*, 241 W. Va. 385, 825 S.E.2d 332 (2019).

---

[1] While Antero, Rockwell, Robert R. Jones, and JEC Production, LLC, were named defendants in the amended complaint filed by the Nicholsons below, those parties have not participated in this appeal.

### III.    DISCUSSION

On appeal, the Nicholsons raise two assignments of error. First, they argue that the circuit court erred in interpreting an unambiguous deed and changing the plain meaning of that deed. Second, the Nicholsons contend that by interpreting an unambiguous deed, the circuit court undermined the confidence of all deeds that include a reservation or grant of a divided interest. As these arguments are interrelated, we will address them together.

We begin our analysis with an examination of the pertinent language of the deed at issue and a determination of whether that deed is ambiguous. In Syllabus Point 3, *Faith United Methodist Church & Cemetery of Terr Alta v. Morgan*, 231 W. Va. 423, 745 S.E.2d 461 (2013), the Supreme Court of Appeals of West Virginia ("SCAWV") succinctly held that "[d]eeds are subject to the principles of interpretation and construction that govern contracts generally." Further, the *Faith* Court found, at syllabus point 7, that "[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." *Id*.

In *Gastar Exploration Inc. and Rona Lee McCardle v. Gary Rine, as the Administrator of the Estate of Okey Franklin Yoho, et al*, 239 W. Va. 792, 806 S.E.2d 448 (2017), the SCAWV stated that "[w]hen a deed expresses the intent of the parties in clear

4

and unambiguous language a court will apply that language without resort to rules of interpretation or extrinsic evidence." The *Gastar* Court reasoned that

> [i]n construing a deed, will, or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from doubt, unless to do so will violate some principle of law inconsistent therewith. A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.

*Id.* at 799-800, 806 S.E.2d at 455-56 (internal citations omitted). In the instant case, the parties dispute whether the 1902 handwritten deed between F.W. Severin and the Nicholsons' predecessor in interest, is ambiguous. As to ambiguity, the SCAWV has held that

> [t]he mere fact that parties do not agree to the construction of a deed does not alone render it ambiguous. The term ambiguity is defined as language reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning. Whether a deed is ambiguous is a question of law to be determined by the court. Where there is ambiguity in a deed, or where it admits of two constructions, the one will be adopted which is most favorable to the grantee.

*Id.* at 800-01, 806 S.E.2d at 456-57 (internal citations and quotations omitted). Here, based upon our review of the record, we find that the 1902 handwritten deed between F.W. Severin and the Nicholsons' predecessor in interest, is not ambiguous.

There is no dispute that the 1902 deed expressly provides that "the parties of the first [J.W. Severin] also reserve the one-sixteenth of all the oil and gas in and under

5

said land." By the clear and express terms of the deed, only one-sixteenth of the oil and gas mineral estate was reserved for Severin, not one-half. There is no other portion of the deed that references the term "one-half" or equates "one-sixteenth" to mean "one-half." In *McCoy v. Ash*, 64 W. Va. 655, 657, 63 S.E. 361, 362 (1908), the SCAWV reasoned that "it is well established that, where a writing is free from ambiguity, it must speak for itself. . . ." Accordingly, we find that based upon the express language contained within the 1902 handwritten deed that the grantor, Mr. Severin, meant what he wrote, in that he reserved only one-sixteenth of all the oil and gas in and under the subject property and not one-half. If we were to adopt the logic espoused by Severin herein that "one-sixteenth" was "one-half," then it would have been impossible for Mr. Severin to have reserved only one-sixteenth of his mineral interest in any way. Such an argument is nonsensical, and we reject the same.

However, even if we were to find some ambiguity within the deed that would enable this court to "construe" the deed by examining the "situation of the parties, the circumstances surrounding them when the contract was entered into[,] and their subsequent conduct giving it a practical construction," we would still find in favor of the Nicholsons. *See* Syllabus Point 2, in part, *Snider v. Robinett*, 78 W. Va. 88, 88 S.E. 599 (1916).

The SCAWV held, at syllabus point 3 of *Poulos v. LBR Holdings, LLC*, 238 W. Va. 89, 792 S.E.2d 588 (2016), that, "[a] deed will be interpreted and construed as of the date of execution." Thus, we must consider what commonly accepted practices and

customs used in 1902 would have then affected the construction of any deeds, such as the

deed at issue herein. Further, the SCAWV has recognized that additional language in a

deed may sometimes alter the meaning of seemingly clear language in that deed. In

*Lockhart v. United Fuel Gas Co.*, 105 W. Va. 69, 141 S.E. 521 (1928), the Court was tasked

with interpreting the following language contained in a deed:

> [t]he said party of the first part grants unto the said party of the second part
> a one undivided sixteenth interest in and to all the oil in and under that certain
> tract of land hereinafter described, as well as the one undivided half interest
> in and to the royalty reserved, or to be reserved, in any gas well that may be
> drilled on said tract of land. It being the true intention of the grantor herein
> to convey to the said party of the second part the one-half of the one-eighth
> of the oil reserved, or to be reserved, in any oil or gas lease that has been
> executed, and which may be executed on said tract of land, as well as the
> undivided half interest in to the royalty reserved, or to be reserved in any
> such lease, for each and every gas well to be drilled on said tract.

*Id*. at 69, 141 S.E. at 521-22. The *Lockhart* Court first looked at the clause expressly

granting "one undivided sixteenth interest in and to all the oil in and under" and reasoned

that, standing alone, this language plainly granted an interest in one-sixteenth of the oil in

place. *Id*. at 72, 141 S.E. at 522. However, the deed also contained the following additional

language:

> [i]t being the true intention of the grantor herein to convey to the said party
> of the second part the one-half of the one-eighth of the oil reserved, or to be
> reserved, in any oil or gas lease that has been executed, and which may be
> executed on said tract of land, as well as the undivided half interest in to the
> royalty reserved, or to be reserved in any such lease, for each and every gas
> well to be drilled on said tract.

*Id*. at 73, 141 S.E. at 522. In determining the effects of this language, the Court construed

the words in light of the existing lease for oil and gas. The existing lease provided royalties

7

to the grantors at one-eighth of oil delivered in the pipeline and $50 for each gas well drilled. Due to this additional language included in the lease, the *Lockhart* Court reasoned:

> . . . to convey such interest in both the oil and the gas under the said premises described in said deed as would give the grantees together an equal one-half of the one-eighth of the oil reserved as royalty, and one-half of the gas rentals, under the then existing lease or any thereafter executed on said land, which, in effect, conveys a one-half undivided interest in the oil and gas in place.

*Id.* at 74, 141 S.E. at 523. Thus, the existence of the reservation language, which reserved a one-half royalty interest, made the clear and unambiguous language conveying a one-sixteenth arguably ambiguous. The *Lockhart* Court ultimately determined that the deed passed a one-half undivided interest in the oil and gas in place.

In their appeal herein, Severin cites a number of cases for the proposition that in the early 1900s that the term "one-sixteenth" was often used synonymously with and was equal to "one-half," including *McCoy v. Ash*; *Kilcoyne v. Southern Oil Co., et al.*, 61 W. Va. 538, 56 S.E. 88 (1907); *Horner v. Philadelphia Co. of West Virginia et al.*, 71 W. Va. 345, 76 S.E. 662 (1912); *Paxton v. Benedum-Trees Oil. Co.*, 80 W. Va. 187, 94 S.E. 472 (1917); and *United Carbon Co. v. Presley*, 126 W. Va. 636, 29 S.E.2d 466 (1944). However, there are critical factual differences in each of the cases cited by Severin and the instant case, which we find render the logic therein inapplicable to the specific facts and circumstances present in the underlying case.

In *Kilcoyne*, the Kilcoynes were deeded, in 1905, all the "rights, title, and interest in and to the oil and gas in and underlying" a certain tract of land by McDougal. In 1904, McDougal had deeded, to another party, one-sixteenth of all the oil within and underlying said tract of land, and one-half of all gas royalties that might be paid therefrom. The language of the deeds in *Kilcoyne* expressly equated one-sixteenth of all the oil within and underlying the land with one-half of the gas royalties to be paid therefrom. Here, unlike the *Kilcoyne* or *Lockhart* deeds, there is no reference to any other fractional interest or any royalty interest, there is simply a reference to a reservation of "one-sixteenth of the oil and gas" in the 1902 handwritten deed. Like *Kilcoyne*, the *Horner* and *Presley* cases cited by Severin also contain deeds explicitly referencing that one-sixteenth of all oil and gas and equating that to one-half of the royalty. Accordingly, as the *Kilcoyne*, *Horner*,[2] and *Presely*[3] cases are not factually similar to the instant case, we find that they are not

---

[2] *Horner* involved a deed which expressly granted "all of the one-half of the royalty, being the one-sixteenth, of all the oil and one-half of all the gas within [. . . .]" Noteworthy to the Court's analysis in *Horner*, was the existence of a lease upon the land granting the lessors one-eighth of the oil produced and a payment of $300.00 per year for each gas well used. The *Horner* Court determined that the deed did not grant one-half of one-eighth of the oil and one-half the gas in place in the ground. Thus, the grantee to the deed did not receive a mineral interest but a royalty interest to the oil and gas produced.

[3] In *United Carbon Co. v. Presley*, 126 W. Va. 636, 29 S.E.2d 466 (1944), the SCAWV found the reservation of a royalty interest rather than a mineral interest to the oil and gas in place. The deed at issue reserved "one-half of the oil and gas royalty upon and as to two tracts of land [...] that is to say that the said Shatto reserves the undivided one-sixteenth of the oil and gas underlaying [. . . .]" The Court held that the further language "Shatto reserves the undivided one-sixteenth of the oil and gas underlaying . . ., defined specifically what would be the beneficial yield to Shatto upon development of the land for oil and gas . . . it defined the term 'royalty' . . . and made specific what was meant by one-half of the royalty." *Id*. at 640, 29 S.E. at 468. Thus, Shatto was entitled to one-half of the royalty distribution.

9

persuasive. These cases do, however, demonstrate that when combined with other language relating to a one-half interest in the royalties, the one-sixteenth language could be used as a reference to the one-half royalty interest. We do note that in such cases, unlike the instant case, the one-sixteenth language could be interpreted as ambiguous.

As for the *McCoy* case cited by Severin, we note that the *McCoy* Court was not tasked with making a determination whether one-half equaled one-sixteenth but was asked to make a determination as to whether an undisputed provision applied to one or both of the transactions made by a grantor. Accordingly, we find that it too is not persuasive.

During oral argument, Severin alleged that the case of *Harris v. Cobb*, 49 W. Va. 350, 38 S.E. 559 (1901), was controlling.[4] In *Harris*, the Court addressed a deed reserving "[...]the equal one-half part of the usual royalty of one-eighth of all the petroleum or oil in and underlying the tract of land hereby conveyed." *Id.* at 559. The *Harris* Court held in syllabus point one that this language reserved "one-sixteenth of the oil in place." While Severin argues that this decision shows that one-sixteenth of oil and gas in place was synonymous with one-half of the royalty interest in 1901, we disagree. First, the *Harris* deed clearly contained language indicating that a royalty interest was the interest actually implicated. Such language is absent in the present case. Further, the contention of Severin is further rebutted both by the *Paxton v. Benedum-Trees Oil. Co.*, 80 W. Va. 187, 94 S.E.

---

[4] *Harris v. Cobb* was not cited or referenced by Severin in its briefing before this Court.

472 (1917) decision which overruled *Harris,* and the *Lockhart* decision which also interpreted a deed from 1901 and found that the one-sixteenth language standing alone was clear and unambiguous and conveyed a one-sixteenth interest, not a one-half royalty interest.

Applying these principles to the present case, at the time of the creation of the deed in question, the language utilized by the grantor was clear and unambiguous, and reserved only the one-sixteenth interest in the oil and gas in place. Any additional language indicating that a one-half royalty interest was contemplated, or other inconsistent language arguably creating ambiguity, is absent. It is the duty of this court to apply the clear and unambiguous language utilized by the parties to the deed. Accordingly, we find that the 1902 handwritten deed reserved a one-sixteenth interest in oil and gas minerals under the land and not one-half.

## IV.  CONCLUSION

Wherefore, based on the foregoing, we reverse the September 28, 2022, order of the Circuit Court of Doddridge County, and remand this matter to the Circuit Court of Doddridge County for further proceedings consistent with this opinion.

Reversed and Remanded.