# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2017 Term

_____

No. 16-0962

_____

FILED

October 19, 2017

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

GASTAR EXPLORATION INC.
and RONA LEE MCCARDLE,
Defendants Below, Petitioners

v.

GARY RINE, as the Administrator of the
Estate of Okey Franklin Yoho, et al.
Plaintiffs Below, Respondents

_____

Appeal from the Circuit Court of Marshall County
The Honorable David W. Hummel, Jr., Judge
Civil Action No. 13-C-164

REVERSED AND REMANDED

_____

Submitted: October 4, 2017
Filed: October 19, 2017

William M. Herlihy, Esq.
Spilman Thomas & Battle, PLLC
Charleston, West Virginia
Matthew P. Heiskell, Esq.
Spilman Thomas & Battle, PLLC
Morgantown, West Virginia
Counsel for Petitioner
Gastar Exploration Inc.

Jeffrey A. Kimble, Esq.
Robinson & McElwee, PLLC
Clarksburg, West Virginia

Jeffrey V. Kessler, Esq.
Berry, Kessler, Crutchfield, Taylor &
Gordon
Moundsville, West Virginia
Counsel for Respondents Gary Rine,
individually and as the Administrator
of the Estate of Okey Franklin Yoho;
Dinah A. Gray; and Carl Smith

Teresa C. Toriseva, Esq.
Joshua D. Miller, Esq.

**Counsel for Petitioner**
**Rona Lee McCardle**

**Toriseva Law**
**Wheeling, West Virginia**
**Counsel for Respondents Betty Pyzell;**
**Norma Ash; Debbie Rine; LeRoy Yoho;**
**Kim Yoho; Ron Yoho; Jodi Yoho; Vicki**
**Williams; Connie Streight; Nancy**
**Brown; Mark Campbell; and Harold**
**Yoho**

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "A circuit court's entry of a declaratory judgment is reviewed *de novo*." Syllabus Point 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995).

2. "When it is found from the pleadings, depositions and admissions on file, and the affidavits of any party, in a summary judgment proceeding under Rule 56 of the West Virginia Rules of Civil Procedure, that a party who has moved for summary judgment in his favor is not entitled to such judgment and that there is no genuine issue as to any material fact, a summary judgment may be rendered against [the moving] party in such proceeding." Syllabus Point 6, *Employers' Liab. Assur. Corp. v. Hartford Acc. & Indem. Co.*, 151 W.Va. 1062, 158 S.E.2d 212 (1967).

3. "For ascertainment of the intent of the parties to a deed in which the description of the subject matter is inconsistent, contradictory and ambiguous, extrinsic evidence is admissible." Syllabus Point 1, *State v. Herold*, 76 W.Va. 537, 85 S.E. 733 (1915).

4. "To enable the court to construe a deed or other writing, ambiguous on its face, it is always permissible to prove the situation of the parties, the circumstances surrounding them when the contract was entered into and their subsequent conduct giving it a practical construction, but not their verbal declarations. But, if a latent ambiguity is disclosed by such evidence, such for instance as that the terms of the writing are equally applicable to two or more objects, when only a certain one of them was meant, then prior and contemporaneous transactions and collocutions of the parties are admissible, for the

i

purpose of identifying the particular object intended." Syllabus Point 2, *Snider v. Robinett*, 78 W.Va. 88, 88 S.E. 599 (1916).

5.     "The term 'ambiguity' is defined as language reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Syllabus Point 4, *Estate of Tawney v. Columbia Nat. Res., L.L.C.*, 219 W.Va. 266, 633 S.E.2d 22 (2006).

6.     "Where there is ambiguity in a deed, or where it admits of two constructions, that one will be adopted which is most favorable to the grantee." Syllabus Point 6, *Paxton v. Benedum-Trees Oil Co.*, 80 W.Va. 187, 94 S.E. 472 (1917).

Justice Ketchum:

This case concerns a 1977 deed and its effect on the ownership of a one-half interest in oil and gas beneath a tract of land in Marshall County, West Virginia. When a deed is ambiguous, a court must weigh extraneous evidence like the conduct of the grantor and grantee to determine the parties' intent. A court must also adopt any reasonable interpretation of the deed most favorable to the grantee.

As we discuss below, we find the 1977 deed is ambiguous and of such doubtful meaning that reasonable minds disagree as to the deed's intent. The Circuit Court of Marshall County incorrectly found the deed was clear, and incorrectly found that the grantors did not convey the one-half interest in oil and gas to the grantee. Because the deed was ambiguous, the circuit court should have considered the parties' conduct after delivery of the deed – namely that the grantors to the deed stopped paying taxes on the oil and gas interest while the grantee started paying taxes. We reverse the circuit court's decision, and remand the case for entry of a judgment in favor of the grantee.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

Before 1957, Clifford and Beulah Franklin owned the entire tract of land in dispute in this case. Then, by a deed dated January 30, 1957, the Franklins conveyed the tract to Okey and Frances Yoho in fee simple, with one important reservation: the Franklins "excepted and reserved" for themselves an undivided one-half interest in the oil

1

and gas underlying the tract.  They conveyed the other one-half interest to the Yohos.  The 1957 deed provided:

> There is further excepted and reserved from this conveyance an undivided one-half (1/2) interest in the oil and gas, including gas storage rights, within and underlying the land hereby conveyed, together with such mining rights and privileges as may be necessary and convenient to the operation thereof for production, storage or observation of said oil and gas and the strata containing the same.

Hence, the parties agree that, under the 1957 deed, the Yohos owned the surface of the tract and owned a one-half undivided interest in the oil and gas.

Over the next 20 years, tax documents in the record indicate that the Yohos paid real estate taxes on that one-half oil and gas interest.  For instance, tax records for 1976 show that the Yohos were assessed taxes on the tract and the one-half oil and gas interest, described in the tax records as "102.080 [acres] Long Run & ½ O&G."  The tax records also show the Franklins were assessed taxes on the other one-half interest, described as, "½ Int[erest] 102.08 [acres] O&G Long Run."

In a deed dated April 5, 1977, the Yohos conveyed the tract to defendant Rona Lee McCardle.[1]  The 1977 deed conveyed to Ms. McCardle "the same property conveyed to Okey F. Yoho and Frances A. Yoho, his wife, by Clifford E. Franklin and Beulah Franklin, his wife, by deed dated the 30th day of January, 1957[.]"

---

[1] A 2016 affidavit in the record suggests that Ms. McCardle is now Rona Rice.  However, the parties, pleadings, tax records, and 1977 deed all use Ms. Rice's name as it was in 1977.  Hence, for purposes of clarity and simplicity, throughout this opinion we refer to the defendant as Ms. McCardle.

However, the parties dispute the meaning of language in the 1977 deed regarding the one-half interest in the oil and gas. The scrivener of the 1977 deed included an "excepted and reserved" paragraph identical, word-for-word, to that contained in the Franklins' 1957 deed, which provided:

> There is further excepted and reserved from this conveyance an undivided one-half (1/2) interest in the oil and gas, including gas storage rights, within and underlying the land hereby conveyed, together with such mining rights and privileges as may be necessary and convenient to the operation thereof for production storage or observation of said oil and gas and the strata containing the same.

In an affidavit, Ms. McCardle stated that it was her "understanding and intention" that she purchased one-half of the oil and gas beneath the tract. Over the next 30-plus years after 1977, tax documents indicate that Ms. McCardle paid real estate taxes on the one-half oil and gas interest. For instance, tax records from 1978 show Ms. McCardle was assessed taxes on land described as "102.080 [acres] Long Run & ½ O&G." In her affidavit, Ms. McCardle stated that since 1977 she has paid all of the real estate taxes due on the surface estate and on the one-half oil and gas interest.

The same tax documents show that, after conveying the property to Ms. McCardle in 1977, the Yohos did not pay real estate taxes on the oil and gas interest. An entry in the 1977 tax records indicates that the Yohos were initially assessed taxes on the tract. However, the tax entry for the Yohos has a line scrawled through with the handwritten notation, "to Rona Lee McCardle DB 465 p. 256 4-5-77 Pd$39500." The 1977 deed from the Yohos to Ms. McCardle is on record in the Marshall County Clerk's

3

Office in Deed Book 465 at page 256. There are no entries in the tax records suggesting that the Yohos paid taxes on the tract or the one-half oil and gas interest after 1977.

In 2008, Ms. McCardle entered into an oil and gas lease with defendant Gastar Exploration, Inc. The lease covers the Marshall County tract described in the 1977 deed between Ms. McCardle and the Yohos. Gastar subsequently drilled a well and began extracting oil and gas from beneath the tract.

**Litigation over the 1977 Deed**

Mrs. Yoho died in 1979; Mr. Yoho died intestate in 1997. Then, in 2013, sixteen years after Mr. Yoho's death, plaintiff Gary Rine was appointed administrator of the estate of Mr. Yoho, to act on behalf of Mr. Yoho's heirs (a group we hereafter call "the Yoho heirs").

On October 15, 2013, plaintiff Rine and the Yoho heirs filed a complaint[2] against defendants Gastar and Ms. McCardle. The Yoho heirs asserted that, in the 1977 deed, the Yohos retained ownership of the one-half undivided interest in the oil and gas. In other words, the heirs contend that the Yohos did not convey their one-half interest to Ms. McCardle, and that the interest eventually passed on to the Yoho heirs. The Yoho heirs alleged that the defendants have trespassed on their oil and gas interest and, by

---

[2] Mr. Rine was the husband of one of Mr. Yoho's daughters, Linda Rine, who died after the complaint was filed. Mr. Rine asserts he is acting as a direct heir of Mr. Yoho as well as the administrator of his estate. Amendments to the original complaint added other heirs of Mr. Yoho to this suit. Additionally, the circuit court appointed an attorney as guardian *ad litem* for any unknown heirs to Mr. Yoho's estate.

4

taking oil and gas from the ground, engaged in conversion. As relief, the Yoho heirs sought compensatory damages, an injunction, and an order creating a lease between the heirs and Gastar.

The Yoho heirs later amended the complaint to request a declaratory judgment interpreting the 1977 deed. In December 2015, the parties informed the circuit court that they had agreed to dispose of the declaratory judgment action while staying the remainder of the case. Based upon the parties' agreement, the circuit court stayed discovery on all claims except the declaratory judgment claim.

In April 2016, the Yoho heirs filed a motion for summary judgment on the declaratory judgment claim and stated that no genuine question of material fact existed regarding ownership of the disputed oil and gas rights.[3] The Yoho heirs argued that the 1977 deed conveyed only the surface of the tract to Ms. McCardle and unambiguously reserved to the Yohos ownership in the one-half interest in the oil and gas. The defendants opposed the motion and asked the circuit court to enter judgment in the defendants' favor. The defendants argued that the 1977 deed was ambiguous, and argued that the parties' actions in the decades after delivery of the deed left no question that the Yohos believed Ms. McCardle was the sole owner of the one-half interest after 1977.

In an order dated September 13, 2016, the circuit court decided that the 1977 deed was clear and unambiguous. The circuit court declared that the Yohos kept for

---

[3] The plaintiffs' motion actually provided that "the Defendants are entitled to judgment as a matter of law." We presume this was a drafting error by plaintiffs' counsel.

themselves the one-half interest in the oil and gas and that the deed "did not convey any mineral interest" to Ms. McCardle. Defendants Gastar and Ms. McCardle now appeal the circuit court's declaratory judgment order.

## II.
## STANDARD OF REVIEW

The salutary purpose of a declaratory judgment action is to resolve legal questions. Hence, "[a] circuit court's entry of a declaratory judgment is reviewed *de novo*."[4] Further, the parties agreed below that no genuine questions of material fact existed and that the circuit court's summary judgment ruling centered upon the legal interpretation of the 1977 deed. We likewise review a circuit court's summary judgment order *de novo*.[5]

The term "*de novo*" means "Anew; afresh; a second time."[6] "We have often used the term '*de novo*' in connection with the term 'plenary.'. . . Perhaps more instructive for our present purposes is the definition of the term 'plenary,'

---

[4] Syllabus Point 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995).

[5] Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.").

[6] *Frymier-Halloran v. Paige,* 193 W.Va. 687, 693, 458 S.E.2d 780, 786 (1995) (quoting *Black's Law Dictionary* 435 (6th ed. 1990)).

6

which means '[f]ull, entire, complete, absolute, perfect, unqualified.'"[7] "We therefore give a new, complete and unqualified review to the parties' arguments and the record before the circuit court."[8]

Because the purpose of a summary judgment proceeding is to expedite the disposition of a case and avoid unnecessary litigation and trials, we proceed with the well-established rule in mind that a summary judgment may be rendered against the party moving for judgment and in favor of the opposing party even though the opposing party has made no motion for summary judgment. As this Court once stated,

> When it is found from the pleadings, depositions and admissions on file, and the affidavits of any party, in a summary judgment proceeding under Rule 56 of the West Virginia Rules of Civil Procedure, that a party who has moved for summary judgment in his favor is not entitled to such judgment and that there is no genuine issue as to any material fact, a summary judgment may be rendered against [the moving] party in such proceeding.[9]

---

[7] *State ex rel. Clark v. Blue Cross Blue Shield of W.Va., Inc.*, 203 W.Va. 690, 701, 510 S.E.2d 764, 775 (1998) (quoting *Black's Law Dictionary* 1154 (6th ed. 1990)).

[8] *Blackrock Capital Inv. Corp. v. Fish*, 799 S.E.2d 520, 526 (W.Va. 2017).

[9] Syllabus Point 6, *Employers' Liab. Assur. Corp. v. Hartford Acc. & Indem. Co.*, 151 W.Va. 1062, 158 S.E.2d 212 (1967). Accord, Syl. pt. 2, *Arnold v. Palmer,* 224 W.Va. 495, 686 S.E.2d 725 (2009); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Miller*, 228 W. Va. 739, 742, 724 S.E.2d 343, 346 (2012). *See also*, *Southern Erectors, Inc. v. Olga Coal Co.*, 159 W.Va. 385, 393-94, 223 S.E.2d 46, 51 (1976) (Under Rule 56(c) of the West Virginia Rules of Civil Procedure, "the authorities agree that a court may enter judgment for a party opposing a summary judgment motion even though no cross-motion has been made."); Fed.R.Civ.Pro. Rule 56(f) [2010] ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider

Continued . . .

7

# III.
# ANALYSIS

The parties agree that, in 1957, the Yohos purchased a one-half undivided interest in oil and gas. The parties' arguments center upon the interpretation of the 1977 deed, and whether the oil and gas interest was conveyed by the Yohos to Ms. McCardle.

"Deeds are subject to the principles of interpretation and construction that govern contracts generally."[10] "[T]he polar star that should guide us in the construction of deeds as of all other contracts is, what was the intention of the party or parties making the instrument, and when this is determined, to give effect thereto, unless to do so would violate some rule of property."[11]

When a deed expresses the intent of the parties in clear and unambiguous language, a court will apply that language without resort to rules of interpretation or extrinsic evidence. "In construing a deed, will, or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from

---

summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."). *See generally*, Charles Alan Wright, *et al.*, 10A Federal Practice & Procedure § 2720.1 (4th Ed. 2017).

[10] Syllabus Point 3, *Faith United Methodist Church & Cemetery of Terra Alta v. Morgan*, 231 W.Va. 423, 745 S.E.2d 461 (2013).

[11] Syllabus, *Totten v. Pocahontas Coal & Coke Co.*, 67 W.Va. 639, 642, 68 S.E. 373, 374 (1910).

doubt, unless to do so will violate some principle of law inconsistent therewith."[12]  "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."[13]

However, when a deed is inconsistent, confusing or ambiguous on its face, a court must look to extrinsic evidence of the parties' intent to construe the deed.  It has been a longstanding rule that, "For ascertainment of the intent of the parties to a deed in which the description of the subject matter is inconsistent, contradictory and ambiguous, extrinsic evidence is admissible."[14]  A trial court may look to a variety of evidence, including the parties' conduct *before and after* delivery of the deed, to discern the parties' intent:

> To enable the court to construe a deed or other writing, ambiguous on its face, it is always permissible to prove the situation of the parties, the circumstances surrounding them when the contract was entered into and their subsequent conduct giving it a practical construction, but not their verbal

---

[12] Syllabus Point 1, *Maddy v. Maddy,* 87 W.Va. 581, 105 S.E. 803 (1921).

[13] Syllabus Point 1, *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962).  *See also*, Syllabus Point 3 of *Cotiga Development* ("It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them."); *Pocahontas Land Corp. v. Evans,* 175 W.Va. 304, 308, 332 S.E.2d 604, 609 (1985) ("Where the intent of the parties is clearly expressed in definite and unambiguous language on the face of the deed itself, the court is required to give effect to such language and, ordinarily, will not resort to parole or extrinsic evidence.").

[14] Syllabus Point 1, *State v. Herold*, 76 W.Va. 537, 85 S.E. 733 (1915).

9

declarations. But, if a latent ambiguity is disclosed by such evidence, such for instance as that the terms of the writing are equally applicable to two or more objects, when only a certain one of them was meant, then prior and contemporaneous transactions and collocutions of the parties are admissible, for the purpose of identifying the particular object intended.[15]

The parties dispute whether the 1977 deed is ambiguous. The mere fact that parties do not agree to the construction of a deed does not alone render it ambiguous. "The term 'ambiguity' is defined as language reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning."[16] Whether a deed is ambiguous is a question of law to be determined by the court.[17] "Where there is ambiguity in a deed, or where it admits of two constructions, that one will be adopted which is most favorable to the grantee."[18]

---

[15] Syllabus Point 2, *Snider v. Robinett*, 78 W.Va. 88, 88 S.E. 599 (1916). *See also* Syllabus Point 10, *Paxton v. Benedum-Trees Oil Co.,* 80 W.Va. 187, 94 S.E. 472 (1917) ("Proper parol evidence is admissible to explain a latent ambiguity in a written contract, and a latent ambiguity is one which arises not upon the words of the instrument, as looked at in themselves, but upon those words when applied to the object sought to be accomplished by the contract or the subject which they describe."); Syllabus Points 2 and 3, *Bank v. Catzen,* 63 W.Va. 535, 60 S.E. 499 (1908) ("When, in attempting to apply a deed to its subject matter or the parties thereto, a latent ambiguity of any kind is disclosed, parol evidence is admissible to a limited extent, to show what was intended, not only by the instrument considered as a whole, but also by particular words or clauses thereof." And, "Parol evidence, admissible for such purpose, is generally limited to the subject-matter, the relation of the parties thereto, their prior and subsequent conduct, their situation, and all the facts and circumstances existing at the time of the execution of the instrument.").

[16] Syllabus Point 4, *Estate of Tawney v. Columbia Nat. Res., L.L.C.*, 219 W.Va. 266, 633 S.E.2d 22 (2006).

[17] *See* Syllabus Point 1, *Berkeley Cty. Pub. Serv. Dist. v. Vitro Corp. of Am.*, 152 W.Va. 252, 162 S.E.2d 189 (1968) ("The mere fact that parties do not agree to the

Continued . . .

The Yoho heirs assert that the 1977 deed is clear and unambiguous, and that the deed conveyed only the surface to defendant McCardle. The Yoho heirs argue the 1977 deed "excepted and reserved from this conveyance" the one-half interest in oil and gas. They argue that the phrase "this conveyance" can only mean the 1977 conveyance, and can only be interpreted to mean that the Yohos (and now their heirs) retained ownership of the one-half oil and gas interest.

Defendants Gastar and Ms. McCardle assert that the 1977 deed is ambiguous and is reasonably susceptible to several interpretations. In the opening paragraphs of the deed, the Yohos conveyed to Ms. McCardle "the same property" they bought in 1957. The opening paragraphs are in harmony with West Virginia law, which presumes grantors in a deed intend to convey ownership of the whole interest that the grantors had power to dispose of.[19] Yet, in a later paragraph, the Yohos "further excepted

---

construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court.").

[18] Syllabus Point 6, *Paxton v. Benedum-Trees Oil Co.*, 80 W.Va. 187, 94 S.E. 472 (1917). *See also* Syllabus Point 3, *W.Va. Dep't of Highways v. Farmer*, 159 W.Va. 823, 226 S.E.2d 717 (1976) ("Where an ambiguity exists in a deed, the language of such deed will be construed most strongly against the grantor."); *Sally-Mike Properties v. Yokum*, 175 W.Va. 296, 300, 332 S.E.2d 597, 601 (1985) ("[I]n cases involving reservations and exceptions, any remaining doubt as to intent should be resolved in the grantee's favor.").

[19] *See* W.Va. Code § 36-1-11 [1923] ("When any real property is conveyed or devised to any person, and no words of limitation are used in the conveyance or devise, such conveyance or devise shall be construed to pass the fee simple, or the whole estate or interest, legal or equitable, which the testator or grantor had power to dispose of, in such real property, unless a contrary intention shall appear in the conveyance or will.").

11

and reserved" an undivided one-half interest in the oil and gas. Because the later paragraph is identical to the oil-and-gas paragraph in the Franklins' 1957 deed, the defendants argue that the intent of the Yohos is ambiguous: they might have been referring to the one-half interest already reserved by the Franklins in 1957, or they might have meant to keep for themselves the one-half interest.

As further support for their assertion that the deed is ambiguous, the defendants point out that the 1977 deed makes reference to two different "out-parcel" transactions. In both out-parcel references, the Yohos used the words "excepted and reserved" in a confusing manner. First, in 1905, a predecessor deeded 22.4 acres from the original tract to another individual. The 1977 deed says that the Yohos were "[e]xcepting and reserving . . . and not intending hereby to convey" that same 22.4 acres. Second, the 1977 deed "excepted and reserved a parcel of .800 acres" that the Yohos conveyed to other individuals in 1970. The defendants argue that the Yohos could not "except and reserve" to themselves these two out-parcels already owned by others. Hence, when the Yohos said they "further excepted and reserved" from the 1977 deed a one-half interest in the oil and gas, the defendants contend the Yohos might have been referring to the one-half interest already owned by the Franklins since 1957.[20]

_____

[20] The defendants also assert that the words "excepted" and "reserved" were used interchangeably by the Yohos in the 1977 deed, thereby creating further ambiguity. At common law, an "exception" was defined as the "retention of an existing right or interest, by and for the grantor, in real property being granted to another." *Black's Law Dictionary* 683 (10th Ed. 2014). *See also*, *Erwin v. Bethlehem Steel Corp.*, 134 W.Va. 900, 915, 62 S.E.2d 337, 346 (1950) (An exception exists when the grantor "withdraws from the operation of the conveyance some part of the thing granted, which but for the

Continued . . .

The defendants also offered the opinion of an expert on deeds. This expert noted that the 1977 deed was a general warranty deed. Under West Virginia law, a grantor who delivers a general warranty deed provides an actual warranty of the title and has an obligation to defend the grantee against any claims regarding the property.[21] Because of the obligations attending a general warranty deed, the expert said it is extremely important for a grantor to delineate with specificity what land interest is, and what is not, being transferred by the deed. The defendant's expert was of the opinion that the exception and reservation of the one-half interest in oil and gas in the 1977 deed referred solely to the interest owned by the Franklins. The expert concluded that the Yohos included the exception and reservation as a way to limit their general warranty. In other words, the language used by the Yohos established they were not giving a warranty

exception would have passed to the grantee under the general description[.]"). A "reservation" is "[t]he creation of a new right or interest . . . by and for the grantor[.]" *Black's Law Dictionary* 1500 (10th Ed. 2014). *See also*, *Erwin*, 134 W.Va. at 915, 62 S.E.2d at 346 (A reservation is made when the grantor creates "some new thing to himself issuing out of the thing granted, and not [before] in *esse*[.]") "Though technically there is a distinction between an exception and a reservation, they are often regarded as synonymous." *Erwin*, 134 W.Va. at 914, 62 S.E.2d at 345. We therefore decline to consider this assertion by the defendants.

As to the portion of the defendants' appeal in which they support their argument regarding the ambiguity created by the interchangeable use of the words "exception" and "reservation," the defendants cite as authority a 2012 order from the circuit court in a different case. The defendants contend the circuit court violated principles of *stare decisis* when it failed to apply holding in the 2012 order in its 2016 order in this case. We see no merit in the defendants' position.

[21] *See* W.Va. Code § 36-4-2 [1923].

13

of title to the one-half interest owned by the Franklins, but that they otherwise were conveying their own one-half interest to Ms. McCardle.

After reviewing the parties' arguments, we find that the 1977 deed is ambiguous. The deed was poorly drafted, the language of the document is uncertain, and reasonable minds may disagree as to just what was conveyed. The deed does not express the precise intentions of the Yohos regarding the one-half interest in the oil and gas underlying the tract. The Yohos may have intended to retain ownership of the one-half interest, as the Yoho heirs assert. The Yohos may have intended to convey ownership of the one-half interest, as the defendants assert. Or, this Court discerns a third interpretation that neither party advanced: the Yohos may have intended to convey ownership of only a one-quarter interest. Specifically, since the Yohos received a one-half interest from the Franklins in 1957, when the Yohos stated that they "excepted and reserved" a one-half interest from their 1977 conveyance, an accurate accounting might be that they retained a half of a half, or a one-quarter interest in the oil and gas.

Our ultimate conclusion, then, is that the 1977 deed is ambiguous. We must therefore look to extrinsic evidence to understand the parties' intent. Further, because of the ambiguity introduced into the deed by the Yohos, our law compels us to adopt the deed interpretation that is most favorable to the grantee, Ms. McCardle.

To divine the intent of the parties to an ambiguous deed, and to give the deed a practical construction, a court may consider the circumstances surrounding the parties when the deed was negotiated and delivered, and may consider their subsequent

14

conduct.[22] The record contains sixty-two pages of land tax records showing the parties' conduct before and after delivery of the 1977 deed. These tax records show that, before the Yohos conveyed the property in 1977, the Yohos paid taxes on the one-half oil and gas interest.[23] After the Yohos conveyed the property to Ms. McCardle in 1977, Ms. McCardle paid the taxes on the same one-half oil and gas interest while the Yohos stopped paying the taxes altogether.

The parties agreed before the circuit court that no questions of material fact existed on the declaratory judgment issue, and both parties asked for a declaratory judgment as a matter of law in their favor. On its face and within its four corners, a reasonable person can interpret the 1977 deed provision regarding ownership of the one-half oil and gas interest in several diametrically opposed ways. We therefore find the 1977 deed provision to be ambiguous as a matter of law. We must construe that provision in favor of the grantee (Ms. McCardle), against the grantors (the Yohos), and in light of the parties' conduct in paying taxes before and after delivery of the deed in April 1977. In sum, on the record presented by the parties, there is no doubt that the Yohos intended to convey the oil and gas interest to Ms. McCardle in 1977.

---

[22] Syllabus Point 2, *Snider v. Robinett*, 78 W.Va. 88, 88 S.E. 599 (1916).

[23] The record suggests that, at the same time, the Franklins also paid taxes on the other one-half oil and gas interest.

15

The circuit court therefore erred in granting a declaratory judgment in favor of the heirs of Mr. Yoho. On this record, the circuit court should have entered judgment in favor of the defendants, Gastar and Ms. McCardle.[24]

## IV.
## CONCLUSION

The circuit court erred in finding that the 1977 deed was unambiguous and in granting a declaratory judgment in favor of the plaintiffs, Mr. Rine and the other Yoho heirs. We therefore reverse the circuit court's September 13, 2016, order, and remand the case for entry of judgment in favor of the defendants, Gastar and Ms. McCardle.

Reversed and remanded.

---

[24] The defendants also asserted on appeal that the circuit court should have ruled in their favor on grounds of laches, estoppel, or adverse possession. Alternatively, the defendants contend the circuit court should have dismissed the Yoho heirs' action for failure to join all individuals who may have had an interest in the oil and gas interest. Our ruling makes these issues moot, and we decline to consider them.