# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**May 20, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Polly Faye Griffin,**
**Petitioner Below, Petitioner**

**v.) No. 22-0459**        (Marshall County No. 18-C-138)

**William E. Toland and**
**Amanda N. White-Toland,**
**Respondents Below/Respondents**

**AND**

**Charlotte White,**
**Respondent Below/Petitioner**

**v.) No. 22-0470**        (Marshall County No. 18-C-138)

**William E. Toland and**
**Amanda N. White-Toland,**
**Respondents Below/Respondents**

# MEMORANDUM DECISION

Petitioners Polly Faye Griffin ("Petitioner Griffin") and Charlotte White ("Petitioner White") (collectively referred to as "Petitioners") appeal the Circuit Court of Marshall County's May 23, 2022, order granting summary judgment to Respondents William E. Toland and Amanda N. White-Toland ("Respondents").[1] Petitioners, the heirs of Hazel L. White ("Mrs. White"), maintain that Mrs. White reserved a one-half interest in the oil and gas in approximately eighty-two acres when she transferred the property to Respondents and that they are now the rightful owners of this interest. Respondents, the undisputed surface owners of the property, contend that they are the rightful owners of the one-half oil and gas interest because the language in Mrs. White's deed to Respondent's predecessors in title was ambiguous as to any reservation of the oil and gas interest. The circuit court agreed with Respondents, determined that the deed in which Mrs. White transferred her interest was ambiguous, found that Petitioners raised no genuine issue of material fact as to Ms. White's alleged intent to reserve or except any oil and gas rights, and

---

[1] Petitioner Griffin is represented by Gregory A. Gaudino, Esq. and Petroplus & Gaudino, PLLC. Petitioner White is represented by Erik A. Schramm Jr., Esq., Kyle W. Bickford, Esq., and Hanlon, McCormick, Schramm, Bickford & Schramm Co., LPA. Respondents are represented by Christian E. Turak, Esq. and Gold, Khourey & Turak, L.C.

1

granted summary judgment in favor of Respondents. Petitioners assert that the circuit court erred in denying their respective motions for summary judgment and in granting the motion for summary judgment filed by Respondents. Petitioners filed separate appeals and we consolidated the appeals for purposes of our consideration.

After careful review of the briefs of the parties, their oral arguments, the appendix record, and the applicable law, we find that the circuit court erred in determining that no genuine issues of material fact exist, and we therefore reverse the court's order and remand the cases for further proceedings. Because this case presents no substantial question of law, we find that it satisfies the "limited circumstances" of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is appropriate for disposition by a memorandum decision rather than an opinion.

## I.      FACTS AND PROCEDURAL HISTORY

These consolidated appeals concern the ownership of an undivided one-half interest in the oil and gas underlying approximately eighty-two acres of real property in the Meade District in Marshall County previously owned by Fred and Hazel L. White. To understand the competing contentions of the parties, we must examine the chain of title for the property and the language of the deeds contained therein.

Fred and Hazel L. White acquired the surface and an undivided one-half interest in the oil and gas pursuant to a deed dated November 18, 1943, from Elmer and Elsie Resseger ("Resseger-White deed"). The Resseger-White deed excepted and reserved the coal underlying the surface and the right to mine it, along with one-half of the rights in the oil and gas as follows:

> There is also excepted and reserved the one half of the oil and gas within and underlying said tract of land together with the right to lease, drill for, operate and produce the same and such other rights as may be necessary and incidental to the production and marketing of said oil and gas.

Prior to the Resseger-White deed all of the coal, oil and gas attendant to the property was owned by the Ressegers. The parties do not dispute that the Ressegers retained the coal interests and a one-half interest in the oil and gas in the property by virtue of the Resseger-White deed, and that Fred and Hazel White acquired a one-half interest in the oil and gas underlying the tract of land by this deed.

When Fred White died his interest in the property transferred to his wife. Mrs. White sold the property to Timmie and Vickie McMillan by deed dated June 29, 1976 ("White-McMillan deed"). The White-McMillan deed purports to reserve the coal underlying the surface, along with the right to mine it, even though she did not own the coal. Additionally, it contains the language that forms the basis of the instant appeal, largely because it is nearly identical to that in the Resseger-White deed as to the oil and gas interests in the property. The White-McMillan deed provides:

There is also excepted and reserved the one-half (1/2) of the oil and gas within and underlying said tract of land, together with the right to lease, drill for, operate and produce the same and such other rights as may be necessary and incidental to the production and marketing of said oil and gas.

This conveyance is, however, subject to the exceptions, reservations, covenants, conditions, restrictions and easements, if any, granted by or acquired from the party of the first part and her predecessors in title to said land.

The subject property was subsequently conveyed multiple times through deeds with nearly identical deed language concerning the mineral interests as that which was contained in the Resseger-White and White-McMillan deeds. Respondents, whose chain of title descends from the McMillans, ultimately acquired the surface interests in the property. At issue in this appeal is whether Respondents also acquired the one-half interest in the oil and gas, or whether Mrs. White retained that one-half interest when she transferred the property to Timmie and Vickie McMillan by the June 29, 1976, White-McMillan deed.

Petitioner Griffin, one of the heirs of Mrs. White, filed a declaratory judgment action naming all of Mrs. White's heirs, including Petitioner White and the surface owner Respondents,[2] asking the court to declare that she and the other heirs were the rightful owners of an undivided one-half interest in the oil and gas underlying the property. Respondents answered the complaint and, after a period of discovery, the parties filed cross-motions for summary judgment. In their respective motions Petitioners maintained that Mrs. White retained the one-half oil and gas interest and that the White-McMillan deed was clear and unambiguous. Alternatively, to the extent that the circuit court found the deed to be ambiguous, Petitioners argued that extrinsic evidence supported the proposition that Mrs. White intended to retain her one-half oil and gas interest in the property when she sold the remainder of the property to the McMillans. Respondents argued that the deed was ambiguous as to whether Mrs. White reserved the one-half oil and gas interest or transferred that interest with the surface rights by virtue of the White-McMillan deed. Further, Respondents claimed that any ambiguities should be construed in their favor, since ambiguities in the deed must be construed against the grantor, Mrs. White, and in favor of the grantees, Respondents' predecessors in title.

The circuit court granted Respondents' motion for summary judgment, finding them to be the rightful owners of the one-half undivided interest in the oil and gas. The court found the White-McMillan deed to be ambiguous "as a matter of law as to . . . what, if any, interest in the Mineral was excepted and reserved." In particular, the court found:

---

[2] The declaratory judgment action also named Chevron U.S.A, Inc. ("Chevron") with whom all of the parties entered into lease agreements for the mineral interests in the property. Likely because Chevron entered into separate lease agreements with both Petitioners and Respondents, it took no position as to the merits of the underlying proceeding and is not a party to this appeal.

> The White-McMillan Deed uses "except and reserve" in a confusing and inconsistent manner.
>
> On the one hand, the White-McMillan Deed uses the phrase "excepting and reserving" to purport to except and reserve the coal. However, the coal was not owned by Hazel L. White, the grantor of the White-McMillan Deed, and the coal could not be excepted and reserved.
>
> On the other hand, the White-McMillan Deed uses the phrase "excepted and reserved" to refer to the oil and gas interest at issue in this case.
>
> The White-McMillan deed is ambiguous in [ ] what is meant by the phrases "excepting and reserving" and "excepted and reserved." The use of these phrases is confusing and unclear.

Because the circuit court found the deed to be ambiguous it considered parol evidence and determined that the weight of the parol evidence supported Respondents' position that Mrs. White did not intend to reserve the minerals in the White-McMillan deed. Specifically, the court found that the oil and gas reservation was "form language" that was copied from the Resseger-White deed. The court opined that "[a] properly drafted exception and reservation of the second half of the oil and gas underlying the Property would have made mention of the first half that was excepted and reserved in the Resseger-White Deed[,]" and "Hazel L. White could have intended to retain ownership of the second one-half interest in the oil and gas, could have intended to convey ownership of the second one-half interest in the oil and gas, or could have intended to convey only a quarter interest." Ultimately, the court concluded that any parol evidence favoring Petitioners' position was not sufficient to overcome this Court's precedents holding that ambiguity in a deed should be construed most strongly against the grantor. Accordingly, the court granted summary judgment in favor of Respondents. This appeal followed.

## II. Standard Of Review

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In reviewing the entry of summary judgment, the Court "'must view the evidence presented through the prism of the substantive evidentiary burden.'" *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 62, 459 S.E.2d 329, 339 (1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 254 (1986)). Further, "[i]n assessing the factual record [when considering a motion for summary judgment], we must grant the nonmoving party the benefit of inferences, as '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]'" *Williams*, 194 W. Va. at 59, 459 S.E.2d at 336 (citation omitted).

We recently noted:

> "[t]he question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and not how that issue should be determined." Syl. pt. 5, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). A grant of summary judgment "is a determination that, as a matter of law, there is no issue of fact to be tried." Syl. pt. 7, in part, *Petros v. Kellas*, 146 W. Va. 619, 122 S.E.2d 177 (1961).

*State ex rel. Berg v. Ryan*, No. 22-853, 2024 WL 1269070 --- W. Va. ---, --- S.E.2d --- (2024). Finally, "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, Syl. Pt. 3. We are mindful that "[a] material fact is one that has the capacity to sway the outcome of the litigation under the applicable law." Syl. Pt. 5, in part, *Jividen v. Law*, 194 W. Va. 705, 461 S.E.2d 451 (1995).

With these standards in mind, we proceed to the parties' arguments.

## III.     Discussion

Petitioners' sole assignment of error on appeal is that the circuit court erred in denying their motion for summary judgment and granting Respondents' motion for summary judgment. In this regard, Petitioners Griffin and White maintain that Hazel L. White reserved the one-half interest in the oil and gas by clear and unambiguous language in the White-McMillan deed. They also argue that Mrs. White's actions were consistent with her intent to reserve this interest: she continuously paid taxes on the mineral interest, she signed agreements leasing those oil and gas rights in 1982 and 1986, and the one-half interest in the oil and gas was included on her estate appraisement.

Conversely, Respondents contend that the White-McMillan deed is internally inconsistent because although it stated that it was conveying "the same property" that the Whites received from the Ressegers, it then "except[ed] and reserve[d]" coal which the Whites *never* owned and a parcel of real property that the Whites had previously conveyed to a third party. Respondents argue that since Mrs. White could not except and reserve property that she did not own, the language in the White-McMillan deed which purports to do so is ambiguous, and therefore the court did not err in considering extrinsic evidence of the intent of the parties to the deed, including their conduct before and after delivery of the deed. Respondents contend that the mineral reservation was merely "carryover" language from the Resseger-White deed, and that the "only logical and consistent construction of the White-McMillan deed is that the parties *did not* intend for Hazel L. White to reserve the minerals." Additionally, Respondents maintain that the tax documents are not particularly instructive because they show that both Petitioners and Respondents paid some tax assessments on the property, a fact that appears to be conceded by all of the parties. However, it does not appear that the grantees in Respondents' chain of title paid separate taxes on the one-half oil and gas interest until 2012 when the parties all entered into lease agreements with Chevron.

The question before this Court – who owns the one-half interest in the oil and gas in the property – revolves around the reservation of the oil and gas interest in the White-McMillan deed.

5

We have noted that "[d]eeds are subject to the principles of interpretation and construction that govern contracts generally." Syl. Pt. 3, *Faith United Methodist Church and Cemetery of Terra Alta v. Morgan*, 231 W. Va. 423, 745 S.E.2d 461 (2013). When considering specific deed language, the reviewing court must determine if an intention is clear by express language and "ascertain the true intent of the parties as expressed by them in the deed, lease or other written instrument under consideration." *Davis v. Hardman*, 148 W. Va. 82, 88–89, 133 S.E.2d 77, 81 (1963). "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.,* 147 W. Va. 484, 128 S.E.2d 626 (1962). Further, "the polar star that should guide us in the construction of deeds as of all other contracts is, what was the intention of the party or parties making the instrument, and when this is determined, to give effect thereto, unless to do so would violate some rule of property." *Totten v. Pocahontas Coal & Coke Co.*, 67 W. Va. 639, 642, 68 S.E. 373, 374 (1910).

Although extrinsic evidence can be considered when a deed is ambiguous it cannot be admitted to create an ambiguity in a deed where one does not otherwise exist. "Extrinsic evidence will not be admitted to explain or alter the terms of a written contract which is clear and unambiguous." *Faith United Methodist Church*, 231 W. Va. at 425, 745 S.E.2d at 463, Syl. Pt. 6, in part. Further, "[t]he determination of whether a deed, contract, or other writing is ambiguous and does not clearly express the intention of the parties is a question of law to be determined by the court." *Harrell v. Cain*, 242 W. Va. 194, 203, 832 S.E.2d 120, 129 (2019).

In *Gastar v. Rine*, 239 W. Va. 792, 806 S.E.2d 448 (2017), the grantor's heirs filed a declaratory judgment action contending that the grantor retained a one-half oil and gas interest when she transferred the surface by deed. *Id.* at 798. The parties moved for summary judgment, maintaining that there were no genuine issues of material fact prohibiting the court from deciding the declaratory judgment issue on summary judgment. *Id*. The circuit court found that there was no ambiguity in the deed and awarded summary judgment. *Id.*

On appeal, this Court reversed the circuit court's order, finding the deed transferring the interest ambiguous in that reasonable minds could disagree as to the grantor's intent. *Id.* Upon finding the language of the deed to be ambiguous, we then analyzed the extrinsic evidence — largely the parties' conduct after delivery of the deed — to discern whether disputed issues of material fact shed light on the intent of the parties. *Id.* (quoting Syl. Pt. 2, in part, *Snider v. Robinett*, 78 W. Va. 88, 88 S.E. 599 (1916)) ("To enable the court to construe a deed or other writing, ambiguous on its face, it is always permissible to prove the situation of the parties, the circumstances surrounding them when the contract was entered into and their subsequent conduct giving it a practical construction, but not their verbal declarations."). We noted that the land tax records established that the grantor paid all taxes before the transfer and the grantee paid the taxes after the transfer. Accordingly, we concluded that the relevant language in the deed must be construed in favor of the grantee and against the grantor because the record established beyond doubt that the grantors intended to transfer the oil and gas interest to the grantees "in light of the parties' conduct in paying taxes before and after delivery of the deed[.]"*Gastar*, 239 W. Va. at 801, 806 S.E.2d at 457.

Although *Gastar* is distinguishable, it is nonetheless instructive in the instant case. Based on reasoning similar to this Court's analysis in *Gastar*, the circuit court determined that the White-McMillan deed does not establish, with certainty or clarity, Mrs. White's intentions regarding the oil and gas reservation. Although Petitioners dispute the court's conclusion that the language was ambiguous, it is supported by the facts and the law and we decline to disturb it on appeal.

Because the circuit court found the oil and gas reservation to be ambiguous, it looked to extrinsic evidence to determine the intent of the parties to the deed. But here, unlike *Gastar*, the extrinsic evidence offered and the parties' actions do not conclusively establish intent. The record establishes that Mrs. White entered into multiple lease agreements for the one-half oil and gas interest both before and after she executed the White-McMillan deed, her heirs listed the one-half oil and gas interest as an asset of her estate on the appraisement when her estate was probated, and Mrs. White and/or her heirs continuously paid ad valorem taxes on the oil and gas interest in the property from 1973 to the present, designated as "83 Bowman and ½ Int O&G Roy" in the land tax records.

Although Respondents do not dispute that Petitioners have continuously paid tax assessments, they counter that the Marshall County tax assessments depict inconsistent and contradictory tax assessments. Respondents alleged they and their predecessors annually received a single tax ticket for "79.9992 A BOWMAN" that covered both their surface interest and mineral interest. They also alleged that they separately paid taxes on the oil and gas interest — "INT IN 83.3 A O&G LEASED" —beginning in 2012, several years after the property was deeded to them. Therefore, Respondents claim, those records are not conclusively supportive of Petitioners' claims. Additionally, Respondents maintain that the lease agreements signed by Mrs. White or her heirs are insufficient to establish her intent to reserve the oil and gas interest because Mrs. White entered into other lease agreements, including coal leases, where she did not own the property or interest she leased, thereby undermining the probative value of the lease agreements. Finally, Respondents contend that the actions of Mrs. White's *heirs* upon her passing is not indicative of *her* intent at the time that she signed the White-McMillan deed many years prior. As previously indicated, the circuit court considered this competing evidence and concluded that the "greater *weight* of the parol evidence" supports respondents' position that Mrs. White did not intend to except and reserve the minerals in the White-McMillan deed. (Emphasis added).

Despite the parties' respective positions that no genuine issues of fact exist in this case,[3] we disagree. Reasonable minds can draw differing conclusions as to Mrs. White's intent regarding the one-half oil and gas interest in the property. Because the evidence of record — including the deeds and the conduct of the parties and their predecessors in title — is not determinative of this issue and could lead a rational jury to find for either party, summary judgment was improper. *See*

---

[3] Syl Pt. 9, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963) ("A motion by each of two parties for summary judgment does not constitute a determination that there is no issue of fact to be tried; and both motions should be denied if there is actually a genuine issue as to a material fact. When both parties move for summary judgment each party concedes only that there is no issue of fact with respect to his particular motion.").

*Williams*, 194 W. Va. at 56, 459 S.E.2d at 333, Syl. Pt. 2. In granting summary judgment in favor of Respondents, the court assessed the weight of the parties' respective evidence on disputed issues of material fact, a role entrusted solely to the jury under our law. Thus, we conclude that the court violated this Court's longstanding mandate that genuine issues of material fact must be resolved at a trial, not on a dispositive motion. Accordingly, the court erred in granting summary judgment to Respondents. *See Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, Syl. Pt. 3.

## IV.    Conclusion

For the foregoing reasons, we reverse the May 23, 2022, order of the Circuit Court of Marshall County granting summary judgment to William E. Toland and Amanda N. White-Toland and remand this case for further proceedings.

Reversed and remanded.

**ISSUED:** May 20, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn