IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

COUNTRY ROADS MINERALS, LLC
and LACORE AGRICULTURE, LLC,
Plaintiffs Below, Petitioners

FILED
May 1, 2026

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

v.) No. 25-ICA-283          (Cir. Ct. Monongalia Cnty. Case No. CC-31-2023-C-214)

ROGER GOODWIN and
REED ENERGY SERVICES, LLC,
Defendants Below, Respondents

**MEMORANDUM DECISION**

Petitioners Country Roads Minerals, LLC, and LaCore Agriculture, LLC, appeal the Circuit Court of Monongalia County's June 10, 2025, order granting summary judgment in favor of Respondents Roger Goodwin and Reed Energy Services, LLC ("Reed Energy"). The issue on appeal is whether the phrase "one sixteenth (1/16) part of all the oil and gas in and under all the land" should be interpreted to mean "one-half of all the oil and gas under the land." Mr. Goodwin filed a response.[1] Reed Energy did not participate in the appeal. Petitioners filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's June 10, 2025, order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Mr. Goodwin acquired an approximately 140-acre tract of land located in Monongalia County (in addition to other property not relevant to this case) by deed dated February 6, 2001 (the "Goodwin Deed"). The Goodwin Deed contained no specific references to an oil and gas reservation, but it noted the conveyance was "made subject to any and all exceptions, reservations, restrictions, easements, rights-of-way and conditions as contained in prior deeds of conveyance in this chain of title."

---

[1] Petitioners are represented by Michael C. Cardi, Esq., Jordan C. Maddy, Esq., and Leigh Anne Wilson, Esq. Mr. Goodwin is represented by Andrew G. Jenkins, Esq.

Petitioners assert ownership of a one-half interest in the oil and gas underlying the subject property by virtue of a deed dated March 24, 2023 (the "2023 Deed"). Petitioners are successors in interest to those interests conveyed by deeds dated May 2, 1891, and June 8, 1891 (collectively, the "1891 Deeds"). The 1891 Deeds, and the conveyances they contain, are at the center of the dispute between the parties. The 1891 Deeds, on their face, purported to grant and convey "the one sixteenth (1/16) part of all the oil and gas in and under all the land belonging to the said first parties." There is no reference to "one-half," "1/2," "50%," or "fifty percent" in either of the 1891 Deeds. The only fraction or percentage referenced in either of the 1891 Deeds is "one sixteenth (1/16)" as stated.

On August 8, 2023, petitioners filed this declaratory judgment action against Mr. Goodwin and Reed Energy (grantor in the 2023 Deed) asserting that the 1891 Deeds did not convey a one-sixteenth interest in the oil and gas underlying the property. Rather, the 1891 Deeds conveyed a one-half interest in the oil and gas underlying the property. In his answer and counterclaim, Mr. Goodwin denies petitioners' contention that the grant, as set forth in the 1891 Deeds granted anything other than a one-sixteenth interest in the oil and gas under the property.

On June 13, 2024, petitioners moved for summary judgment seeking confirmation of their asserted one-half interest in the oil and gas under the property. In his response, Mr. Goodwin denied that petitioners own a one-half interest and moved for summary judgment in his favor, seeking confirmation that the 1891 Deeds mean what they say, and petitioners own no more than what was granted in the 1891 Deeds—a one-sixteenth interest in the oil and gas underlying the property. On September 4, 2024, the circuit court held a hearing on the cross motions for summary judgment.

In its June 10, 2025, order, the circuit court denied petitioners' motion for summary judgment and granted Mr. Goodwin's and Reed Energy's motion for summary judgment, determining,

> This Court finds that the 1891 Deeds at the heart of the parties' dispute are unambiguous, such that extrinsic evidence is unnecessary to discern their meanings. The Court notes that the fraction "one-half" or "1/2" is not contained in any document relevant to the analysis the parties ask the Court to undertake, nor is there any other language in the 1891 Deeds suggesting that "1/16" or "one sixteenth" should not be taken literally to mean 1/16 or one sixteenth, instead of the 1/2 that Plaintiffs advocate.

Finding this Court's decision in *Nicholson v. Severin POA Group, LLC*, 249 W. Va. 458, 895 S.E.2d 927 (Ct. App. 2023), *appeal docketed*, No. 23-752 (W. Va. Dec. 22, 2023) instructive, the circuit court concluded that the 1891 Deeds conveyed a one-sixteenth

2

interest in the oil and gas underlying the property.[2] Petitioners' appeal of the June 10, 2025, order followed.

We review the order on appeal under a de novo standard of review. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."); Syl. Pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995) ("A circuit court's entry of a declaratory judgment is reviewed *de novo*."); *Zimmerer v. Romano*, 223 W. Va. 769, 777, 679 S.E.2d 601, 609 (2009) ("The facts of this case call upon this Court to interpret a written deed. Thus, we apply a de novo standard of review to the circuit court's interpretation of the contract.").

In their sole assignment of error, petitioners assert that the circuit court erroneously found the 1891 Deeds to be clear and unambiguous and thus, did not require an analysis of any extrinsic evidence to interpret the deeds. Petitioners argue that longstanding jurisprudence in West Virginia indicates that the conveyance of "the one sixteenth (1/16) part of all the oil and gas in and under all the land" must be construed to convey, in legal effect, an undivided one-half interest in the oil and gas in place. Conversely, Mr. Goodwin argues that the phrase "one sixteenth" in the 1891 Deeds is not ambiguous, and the circuit court's order should be affirmed. We agree with Mr. Goodwin.

In *Gastar Exploration Inc. v. Rine*, 239 W. Va. 792, 798-99, 806 S.E.2d 448, 454-55 (2017), the SCAWV stated that "[w]hen a deed expresses the intent of the parties in clear and unambiguous language, a court will apply that language without resort to rules of interpretation or extrinsic evidence." In this case, the parties dispute whether the 1891 Deeds are ambiguous. As to ambiguity, the SCAWV has held,

> [t]he mere fact that parties do not agree to the construction of a deed does not alone render it ambiguous. The term "ambiguity" is defined as language reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning. Whether a deed is ambiguous is a question of law to be determined by the court.

*Id.* at 799, 806 S.E.2d at 455 (citation modified). In addition, it is well-settled that "[p]arties are bound by general and ordinary meanings of words used in deeds." Syl. Pt. 8, *Faith United Methodist Church and Cemetery of Terra Alta v. Morgan*, 231 W.Va. 423, 745 S.E.2d 461 (2013) (quoting Syl. Pt. 1, *McDonough Co. v. E.I. DuPont DeNemours & Co., Inc.,* 167 W. Va. 611, 280 S.E.2d 246 (1981)).

---

[2] In *Nicholson*, the deed reservation language at issue was "one-sixteenth of all the oil and gas in and under said land," which we determined unambiguously reserved a one-sixteenth interest, not a one-half interest.

Based upon our review of the record in the instant case, we find that the 1891 Deeds are unambiguous. There is no dispute that the 1891 Deeds expressly grant "the one sixteenth (1/16) part of all the oil and gas in and under all the land belonging to the said first parties." By the clear and express terms of the 1891 Deeds, only one-sixteenth of the oil and gas mineral estates was subject to the grants, not one-half. There is no other portion of the deed that references the term "one-half" or equates "one-sixteenth" to mean "one-half." In *McCoy v. Ash*, 64 W. Va. 655, 657, 63 S.E. 361, 362 (1908), the SCAWV reasoned that "it is well established that, where a writing is free of ambiguity, it must speak for itself . . . ." Accordingly, we find that based upon the express language contained within the 1891 Deeds, the grantors meant what they wrote in that they granted only one-sixteenth of the oil and gas in and under the property and not one-half.

Petitioners additionally contend that the use of the term "Oil Royalty" in the 1891 Deeds' title creates ambiguity in the term "one-sixteenth" as it is used in the granting language. We disagree. First, "the one sixteenth (1/16) part of all the oil and gas in and under all the land belonging to the said first parties" is an unmistakable grant of a mineral estate, not a grant of a royalty interest. Moreover, the 1891 Deeds do not contain the term "royalty" anywhere else in the instrument. The term "royalty" in the 1891 Deeds' title alone is insufficient to create an ambiguity.

For the foregoing reasons, we affirm the circuit court's June 10, 2025, order.

Affirmed.

**ISSUED:** May 1, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

**CONCURRING AND WRITING SEPARATELY:**

Judge S. Ryan White

Given this Court's decision in *Nicholson v. Severin POA Group, LLC*, 249 W. Va. 458, 895 S.E.2d 927 (2023) (appeal pending), I concur with my colleagues. Had I been writing on a blank slate, however, I might have been inclined to reach a different result, one that allowed more latitude to consider extrinsic evidence concerning industry usage and custom in determining fee shares under antiquated oil and gas deeds.

4

In *Nicholson*, the ICA determined whether a reservation of "one-sixteenth of all the oil and gas in and under said land" reserved a one-sixteenth interest or a one-half interest. Acknowledging "that additional language in a deed may sometimes alter the meaning of seemingly clear language," the *Nicholson* panel[3] noted that there was no other language in the deed which indicated that "one-sixteenth" meant anything other than "one-sixteenth" or that created an ambiguity as to what "one-sixteenth" meant. Specifically, the court observed that there was "no other portion of the deed [referencing] the term 'one-half' or equat[ing] 'one-sixteenth' to mean 'one-half.'" *Id*. at 460, 895 S.E.2d at 929. It also stated that there was "no reference to any other fractional interest or any royalty interest," *id*. at 461, 895 S.E.2d at 930, that there was no language implicating a royalty interest, *id*. at 462, 895 S.E.2d at 931, and that "any additional language indicating that a one-half royalty interest was contemplated, or other inconsistent language arguably creating ambiguity, is absent." *Id*. Based on "the clear and express terms of the deed," without considering any extrinsic evidence concerning industry usage when the deed was executed,[4] the court held that "one-sixteenth" did indeed mean "one-sixteenth." [5] *Id*. at 462, 895 S.E.2d at 931.

The *Nicholson* decision was grounded on a number of well-established rules of construction and interpretation: language in a deed should be given its usual and ordinary meaning, extrinsic evidence should not be considered when a deed is unambiguous, and extrinsic evidence cannot be used to create ambiguity. But our jurisprudence also recognizes that written instruments such as deeds sometimes contain "terms of art" with a special meaning in some trades or industries, and that meaning may differ from the ordinary and usual meaning of those words. *See* Syl. Pt. 1, *Bank v. Catzen*, 63 W. Va. 535, 60 S.E. 499 (1908) ("In deeds, contracts, and other instruments, both technical and nontechnical, words are sometimes given meanings variant from the significations they ordinarily have, and, when it is manifest that the parties have intended them to have a restricted or peculiar

---

[3] I was not elected to this Court until after the *Nicholson* decision was released.

[4] In *Nicholson*, the Respondents, collectively referred to as the Severin POA Group, LLC, argued that under "the commonly accepted practices and customs used [when the deed was executed], a reservation of one-sixteenth of an oil and gas mineral interest was actually a reservation of one-half of that interest." 249 W. Va. at 459, 895 S.E.2d at 928. Petitioners in this case make a similar argument.

[5] The *Nicholson* panel also held that "even if we were to find some ambiguity within the deed that would enable this court to 'construe' the deed by examining the 'situation of the parties, the circumstances surrounding them when the contract was entered into[,] and their subsequent conduct giving it a practical construction,' we would still find in favor of the Nicholsons. *See* Syl. Pt. 2, in part, *Snider v. Robinett*, 78 W. Va. 88, 88 S.E. 599 (1916)." 249 W. Va. at 460, 895 S.E.2d at 929.

signification, such intention will be respected and enforced by the courts."); Syl. Pt. 3, *Hickel v. Starcher*, 90 W. Va. 369, 110 S.E. 695 (1922) (" A technical word in a deed or will is presumed used in its technical sense and must be allowed such effect in the absence or terms or provisions of the instrument containing it, which of themselves or with the aid of admissible facts and circumstances revealed by extrinsic evidence disclose grantor's or testator's intent and purpose to use the term in a different sense.") (citation modified).[6]

Furthermore, extrinsic evidence in the form of custom or usage in a particular trade or industry may reveal latent ambiguities which are not apparent from merely reading the document. *See Energy Develop. Corp. v. Moss*, 214 W. Va. 577, 585, 591 S.E.2d 135, 143 (2003) ("… a document that may appear on its face to be free from ambiguity, may be deemed latently ambiguous. 'A latent ambiguity, which does not appear upon the face of the document… may be created by intrinsic facts or extraneous evidence.'"). In *Energy Develop. Corp.*, the court recognized the role of custom and usage in the gas industry when resolving ambiguities, be they patent or latent, saying:

> The circuit court also determined that it could examine the custom and usage of the gas industry at the time the leases were executed in its search for the parties' intent. This, too, is a principle of long standing: "Oral testimony of the general usages of the gas business, which must have been in the minds of the parties at the time of entering into the contract, is admissible to explain an ambiguity in a written contract for the purchase of gas, whether the ambiguity be latent or patent."

*Id*. at 587, 591 S.E.2d at 145 (citations omitted). When interpreting an ambiguous deed, courts must look to the intention of the parties when the deed was executed. *Id*. at 586, 591

---

[6] Leading treatises also recognize that terms of art may have special meanings different from their common and ordinary meanings and that evidence of usage within a relevant trade may be considered in interpreting the meaning of a document. *See* 12 *Williston on Contracts* 34:1, Westlaw (4th ed. database updated May 2023) ("[O]ften terms that are unambiguous on their face may be ambiguous or have a different meaning as a matter of fact, as when the terms have both an ordinary and a special trade meaning. In those circumstances, evidence of usage is admissible to show that the words, though they are unambiguous according to their well-known meaning, have acquired by usage of trade a peculiar and different meaning in the particular trade or profession, and that they were used in that manner in the contract in question."); *Restatement (Second) of Contracts* § 222, comment b, Westlaw (database updated October 2024) ("There is no requirement that an agreement be ambiguous before evidence of a usage of trade can be shown, nor is it required that the usage of trade be consistent with the meaning the agreement would have apart from the usage.").

S.E.2d at 145; *see Poulos v. LBR Holdings, LLC*, 238 W. Va. 89, 792 S.E.2d 588 (2016) (holding that reservation of a one-half interest in oil and gas underlying the subject property in a 1938 deed did not reserve an interest in coal bed methane ("CBM") in part because CBM was considered a dangerous nuisance rather than a valuable resource when deed was executed).

In applying the competing rules of construction that could be invoked, I might have reached a different result than the *Nicholson* panel and allowed circuit courts somewhat more latitude in discerning the intent of the parties, preferably on a case-by-case basis, *see Energy Develop. Corp. v. Moss*, 214 W. Va. 577, 591 S.E.2d 135 (2003) (adopting a case-by-case approach to determining whether language conveying oil and gas interests conveyed or reserved interests in CBM); *Poulos v. LBR Holdings, LLC*, 238 W. Va. 89, 93, 792 S.E.2d 588, 592 (2016) ("In *Moss*, we adopted a case-by-case approach focused on the intent of the parties at the time of making a conveyance."), but I recognize that *Nicholson* is binding authority unless it is overturned by the West Virginia Supreme Court of Appeals.